On May 14, 1999, Minnie Russell sued Johnny Russell, Jr., for a divorce, alleging incompatibility of temperament, an irretrievable breakdown of the marriage, and adultery; there were no children born of the marriage. It appears from the record that the husband also filed a divorce action and that the court consolidated the cases on October 13, 1999.
Following an ore tenus proceeding, the court, on December 1, 1999, entered a judgment divorcing the parties, stating, in part:
 "3. The [wife] is awarded the homeplace as alimony in gross, and she shall be responsible for the indebtedness due thereon and hold the [husband] harmless therefrom. The [husband] shall give the [wife] a deed to transfer all of his right, title and interest in and to said property to the Plaintiff within thirty days of the date of this Judgement of Divorce. In the event the [husband] fails, refuses or neglects to convey said property within thirty days of the date of the Judgment of Divorce, then the . . . Clerk of this Court is empowered to do so upon submission of the deed or proper document by counsel to the Circuit Court.
 "4. The [husband] shall pay to the [wife] as alimony the sum of $450.00 per month through the Accounts Clerk plus commission due by law commencing December of 1999.
 "5. By agreement, the [husband] shall submit to his counsel his medical records that tend to indicate that he is unable to work; and said [husband's] counsel shall then forward same records to [wife's] counsel by 12:00 Noon on Friday, December 3, 1999.
 "6. As periodic alimony a judgment is awarded against the [husband] in favor of the [wife] and her attorney for $750.00 representing monies to be applied towards a reasonable attorney's fee."
The court denied the husband's motion for "reconsideration" on January 6, 2000. The husband appeals, arguing that the court abused its discretion in awarding the wife periodic alimony.
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the "ore tenus rule." Under this rule, the trial court's judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, *Page 733 623 So.2d 323 (Ala.Civ.App. 1993). This presumption of correctness is based on the trial court's unique position, a position in which it can observe the witnesses and assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala. 1986). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464
(Ala.Civ.App. 1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064
(Ala.Civ.App. 1995). Factors the trial court should consider in its awarding alimony and dividing property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; their station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce. Id., at 1067. It is not the actual earnings, but the ability to earn that is considered in determining an award of alimony. Rolls v. Rolls, 623 So.2d 744 (Ala.Civ.App. 1993). Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Willing, supra. Additionally, an attorney fee may be allowed in a divorce case, in the discretion of the trial court. Holmes v. Holmes, 487 So.2d 950 (Ala.Civ.App. 1986).
The parties were married in 1976; at the time of the trial, both were 60 years old. The wife testified that she had not seen the husband in about three years and that he had left her numerous times to live with another woman, but that "the seventh time he didn't come back." She said that the husband had not provided any financial support during the separation. She stated that she receives $555 per month in Social Security disability benefits and that she relies on her family to assist her in meeting her financial obligations. The wife's expenses consisted of a monthly mortgage payment of $328.76 and prescription drugs, which, according to an exhibit, totaled $634.46 per month. The marital residence had been rebuilt because of a fire and was currently valued at $54,000, with a balance owed of $26,200. The wife stated that she had experienced several medical problems, including triple-bypass heart surgery, cancer, and diabetes, and, she said, she took medication for her heart and blood pressure and that she was undergoing chemotherapy.
The husband stated that he had been employed as a truck driver "all of his life," earning approximately $500 to $700 per week; however, at the time of the trial, he said, he had no source of income, no retirement account, and no bank account. He stated that he had not worked since undergoing surgery in September 1999; that he had inquired about a job with his former employer; but that he did not think he was able to return to work because of his medical condition. When asked about the nature of his medical condition, he replied, "I have to take thyroid medicine and sometimes I take pills for indigestion or something like that." He was then asked if he had any other medical problem, and he responded, "No, that's about all right now." He admitted that he had not supported his wife in the past three years; that he had lived with another woman; and that his family and friends had supported him. He agreed that the wife should receive the marital residence, including all the equity in the homeplace.
We note that as a part of the court's judgment, the husband was ordered to provide to the wife's counsel his medical records to substantiate his inability to work. Those medical records were not included in the record before this court, nor is there anything in the record to indicate that the husband provided *Page 734 
those records to counsel as ordered, nor were the medical records included in the husband's motion to reconsider. Because we cannot determine if the husband complied with the trial court's order, we cannot say the court abused its discretion in finding that the husband had the ability to pay the wife alimony. Although the husband testified that he was unable to work, the trial court ordered that he support that testimony with his medical records. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
Robertson, P.J., and Monroe and Thompson, JJ., concur.
Crawley, J., concurs in the result.