[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 557 
On February 24, 1999, James Lytton Glazner sued Elisabeth C. Glazner for a divorce, alleging incompatibility of temperament. The wife answered and counterclaimed, seeking custody of the parties' three minor children, child support, alimony, and a division of the marital assets. On June 23, 1999, the parties entered into a memorandum agreement in open court that allowed the wife temporary custody of the children, exclusive use of the marital residence, and the use of a Ford Expedition motor vehicle. The husband was ordered to pay $4,062 per month in "family support" and was ordered to maintain the lease on the Ford Expedition. After the wife petitioned for a rule nisi and the husband counterpetitioned, the court entered an order ratifying the parties' June 1999 memorandum agreement and ordered the husband to pay postminority support for the parties' oldest child, who was attending college.
After conducting a 10-day ore tenus proceeding, the court, on June 7, 2000, entered a detailed 14-page judgment of divorce. As it pertains to this appeal, the order stated,
 "4. That the [wife] is hereby awarded the care, custody and control of the minor children of the parties. . . .
". . . .
 "8. That the [husband] is hereby ordered to pay to the [wife] the sum of [$2,500] per month for the support and maintenance of the said minor children of the parties. . . . The child support is not set pursuant to Rule 32 Child Support Guidelines, Rule of Judicial Administration[,] due to the [fact that the husband's income exceeds] the guidelines. The Child Support Guideline Forms, [husband's and wife's CS-41 `Income Affidavit' and CS-42 `Child Support Guideline'], are filed in this cause.
". . . .
 "19. That the [husband] shall pay to the [wife] the sum of [$1,500] per month as periodic alimony. . . .
 "20. That the [husband] shall pay to the [wife] the sum of [$300,000] as alimony in gross, payable at the rate of [$50,000] per year for six years with the first payment being due and payable within sixty (60) days from the date of this Final Judgment of Divorce and subsequent payments being due and payable each September 5 thereafter until satisfied. The alimony in gross is not subject to modification . . . and shall not be deducted by the [husband] on any federal or state income tax return and no payment received by the [wife] hereunder will be reported by the [wife] as income on any federal or state income tax return. In the event any installment due is not made within fifteen (15) days of the due date as provided for herein, that installment shall bear interest at the rate of eight (8%) percent per annum from the date of this Final Judgment of Divorce.
". . . . *Page 558 
 "22. That the residence of the parties . . . shall be the sole and separate property of the [wife] and the [husband] is divested of any interest therein. The [husband] shall convey to the [wife] by warranty deed any and all of his right, title and interest in and to the above described real estate.
 "23. The Court finds that there is a mortgage on the said residence as described in Paragraph 22 hereinabove through Compass Bank which will be paid off in approximately three (3) years, and a home equity loan on said residence, also through Compass Bank. The [husband] shall be solely responsible for all mortgage payments (both first and second mortgages), including principal, interest, taxes and insurance, and any other payments due and owing in connection with the said residence and he shall indemnify and hold the [wife] harmless therefrom.
 "24. That the [husband] shall have as his sole and separate property, the warehouse on the leased lot and his interest in Village Variety Toys and Gifts, Inc., and the [wife] is divested of any interest therein.
 "25. That, for the purpose of marital property division, the [husband's] interest in the Village Variety Toys Gifts, Inc. Profit Sharing Plan is hereby awarded to the [husband] and the [wife] is divested of any right, title or interest therein, except for one-half of said Plan which is hereby awarded to the [wife] effective on the `Assignment Date' which shall be the date of this Final Judgment of Divorce and the [husband] is divested of any right, title or interest therein.
". . . .
 "36. That the [husband] shall pay directly to Bruce L. Gordon, as attorney for the [wife], the sum of [$58,500] as attorney's fees for professional services rendered on behalf of the [wife] in this matter and [$4,774.59] in expenses. This amount does not [necessarily] reflect the total value of said professional services but merely reflects the amount the [husband] is obligated and ordered to pay. Said attorney's fees and expenses shall be paid by the [husband] within thirty (30) days from the date of this Final Judgment of Divorce.
". . . .
 "43. That the Court finds the [wife] in contempt of Court for her willful failure to comply with the visitation provisions of the Pendente Lite Order entered by the Court on September 23, 1999, wherein on at least two occasions, the [wife] specifically told the minor children that they did not have to go with the [husband] for his visitation. The Court further finds that the [wife's] actions . . . have played a role in the deterioration of the relationship between the parties' children and the [husband]
 "44. That the Court finds the [wife] has failed to allow the [husband] his visitation with the children pursuant to the Pendente Lite Order heretofore rendered in this cause on September 23, 1999, through her willful contumacy and not her inability to comply and is therefore in criminal contempt of Court for failing to comply with the aforesaid Pendente Lite Order. The Court, therefore, cites the [wife] for criminal contempt and for violation of this Court's Order does sentence the [wife] to four (4) days in the Jefferson County Jail; however, the Court suspends sentence conditioned on the [wife's] future compliance with this Court's Orders.
 "45. That the Court finds . . . the [husband] in contempt of Court for his willful failure to comply with the terms of the Order heretofore rendered by the Court on January 26, 2000, wherein he *Page 559 
failed to continue or extend the lease on the 1997 Ford Expedition nor did he make [available] alternative means of transportation for the [wife]. The 1994 Ford Mustang was not made available for delivery to the [wife] until February 11, 2000. The Court, therefore, cites the [husband] for contempt and for violation [of] this Court's Order does sentence the [husband] to two (2) days in the Jefferson County Jail; however, the Court suspends said sentence conditioned on the [husband's] future compliance with this Court's Orders."
The husband and wife filed postjudgment motions. After conducting a hearing, the court, on September 5, 2000, entered an amended order that, in part, reduced the husband's child-support payment to $1,800 per month, and the court prepared a CS-42 "Child Support Guideline" form with its order; the court entered two additional amended orders that are not pertinent to this appeal.
The husband argues, based on his financial circumstances, that the court erred in its award of child support, periodic alimony, alimony in gross, and attorney fees. The wife cross-appealed, arguing that the court erred in its award of alimony, in its findings of contempt, and in awarding her an insufficient amount for attorney fees based on the evidence.
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong.Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App. 1993). This presumption of correctness is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility. Hall v.Mazzone, 486 So.2d 408 (Ala. 1986). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464
(Ala.Civ.App. 1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App. 1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; the parties' station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the marriage. Id., at 1067. Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id. Additionally, an attorney fee may be allowed in a divorce case, in the discretion of the trial court. Holmes v. Holmes,487 So.2d 950 (Ala.Civ.App. 1986).
The trial court heard nine days of testimony from numerous witnesses, and the proceeding yielded a record consisting of nine volumes. A detailed recitation of the facts would serve no useful purpose. The dispositive issue is whether there was evidence to support the trial court's award of periodic alimony, alimony in gross, and child support based on the husband's financial circumstances.
The parties married in 1980, shortly after graduating from high school; neither has a college education. They have three children; at the time of the trial, the older *Page 560 
child was 19 years old and attending college full-time, the two younger children, a 16-year-old and a 15-year-old, were both in high school. The husband had worked for his father's company, Village Variety Toys and Smith's Variety, since 1982 and he had become the sole owner of the company in January 1999, after his father suffered an illness that prevented him from running the company. The husband stated that the company was valued at over $1 million; that he owned 100% of the company's stock; that he received a base salary of $50,000 per year, plus bonuses; and that he had received a "distribution" of $300,000 in 1999 based on 1998 profits from the business. He stated that he used the distribution to pay taxes and personal debts and that he lent a portion back to the company. He stated that he also had earned between $20,000 and $25,000 in 1998 from the sale of Beanie Babies (small stuffed-animal-type toys) and that he had a warehouse valued at $50,000. The husband's CS-41 "Income Affidavit" form, filed in June 1999, showed a monthly gross income of $18,916; the husband filed an updated CS-41 form in September 1999, showing the same amount of income, and another CS-41 form in May 2000, showing a total income of $6,547 per month. At trial, the husband stated that his income had been reduced primarily as a result of a loss of earnings for the current year and that there had been no profit-sharing contribution made for 1999.
Doug Hill, the certified public accountant for the husband's company, testified that $491,999 in salaries had been paid in 1998; that $223,602 in salaries had been paid in 1999; and that for 2000 the company was showing a loss of $64,019 as compared to its earnings the previous year. He stated that the husband had received a $300,000 distribution in 1999 that could be considered an advance or loan; that the husband's W-2 statement showed wages of $43,000 for 1999 and that the company's income was $227,000 for 1998 plus an additional $20,000 from S-corporation earnings. Sam Sumner testified as an expert witness regarding the valuation of the husband's company, stating that the current market value of the company was $1,667,520. J.R. Pierce, a certified public accountant also testified as an expert witness, stating that, based on the company's tax returns from 1995 through 1999, the company was valued at $1,939,263 and that the husband's average net income for the past five years was $372,640 with an income of $122,359 in 1999.
It was undisputed that the wife had been a housewife and had not worked outside the home other than to "help out" in the store during the Christmas season and to assist the husband in selling Beanie Babies during 1997 and 1998. She testified that she was currently being trained at a beauty salon to provide services such as manicures and pedicures and she did not receive wages and that her only compensation was tips, which averaged $180 per month. We note that the trial court imputed a monthly income of $892.66 on its amended CS-42 "Child Support Guidelines" form.
Based on the future earning capacity of the parties and the husband's current financial resources, we conclude that there was ample evidence to support the trial court's judgment. Further, we find that the court amended its original order and reduced the husband's child-support payment by $700 per month. The trial court noted in its order that child support was not set pursuant to Rule 32, Ala. R. Jud. Admin., because the husband's income exceeded the guidelines, and the trial court included the appropriate child support forms. Therefore, we conclude that the trial court did not err in its award of child *Page 561 
support. See Ullrich v. Ullrich, 736 So.2d 639 (Ala.Civ.App. 1999).
Regarding the attorney fee awarded to the wife, this court has consistently held that it is within the sound discretion of the trial court to award an attorney fee in a domestic-relations case and that its ruling will not be reversed, absent an abuse of discretion. Lester v.Lester, 690 So.2d 378 (Ala.Civ.App. 1996). In this case, the wife's attorney testified regarding the hours he and his firm had spent in representing her, and the court heard testimony from an attorney, John Wood, who stated that he estimated the value of services by the wife's attorney at $62,500 based on the facts and the history of the case.
As to the wife's argument that the court erred in its findings of contempt, we note that the question whether a party has failed to abide by the terms of a trial court's order and is in contempt of court is a matter within the sound discretion of the trial court. Whitehead v.Whitehead, 707 So.2d 276 (Ala.Civ.App. 1997).
Each party's request for an attorney fee on appeal is denied.
The judgment of the trial court is affirmed.
AFFIRMED.
Crawley and Pittman, JJ., concur.
Thompson, J., concurs in the result.
Murdock, J., recuses himself.