MURDOCK, Judge.
On January 19, 2005, the Lauderdale Circuit Court entered a final judgment divorcing Larry Turnbo (“the husband”) from Yolanda Turnbo (“the wife”). The judgment ordered the husband to pay alimony to the wife, divided the parties’ assets, and made an award of attorney fees to the wife. The husband appeals.
Specifically, the trial court ordered the husband to pay periodic alimony to the wife in the amount of $1,500 per month for a period of 24 months. The trial court awarded to the husband the marital residence, subject to the outstanding mortgage-secured indebtedness thereon; two other parcels of real property (located in Savannah, Tennessee); a GMC pickup truck; a Star Deck boat; and certain personal property. The trial court awarded to the wife real property located at Roberts Lane and Conway Drive in Florence, Alabama, subject to certain indebtednesses owed on those properties; a 1999 Lexus automobile; and certain personal property. The husband was made responsible for the debt secured by the Lexus automobile, for two debts incurred by the wife to her dentist and an anesthesiologist, and for any debts in his name. The wife was made responsible for any debts in her name other than the debts to her dentist and the anesthesiologist. The wife was awarded her retirement account from Safe Place, Inc., a Fidelity mutual fund, a Vanguard individual retirement account (“IRA”), and any bank accounts solely in her name. The husband was awarded all stock in Turnbo Motor Express (“TME”), a Janus IRA, a Vanguard Star fund, and all other IRAs, mutual funds, pension plans, retirement funds, and bank accounts solely in his name. Finally, the trial court required the husband to pay $4,060 for the •wife’s attorney fees.
On appeal, the husband argues that the trial court’s alimony award financially cripples him. The husband also argues that the trial court lacked the authority to award the wife the Lexus automobile because the automobile was owned by TME, that the trial court should not have required him to pay the debt secured by the Lexus because he is financially unable to do so, and that the trial court abused its discretion in requiring him to pay the wife’s attorney fees.
The husband is the sole shareholder of TME, a long-haul trucking operation, which has been operating under a Chapter 11 “reorganization” bankruptcy petition since 2003. Although TME has a negative net worth of approximately $1,194,000, the husband is paid a salary of $52,000 per year by TME. In addition, TME pays mortgage payments on the marital residence totaling $5,000 per month, as well as the parties’ utility bills, the cost of an “office phone” maintained by the husband in the marital residence, cell-phone bills, other household expenses, gas credit card bills, insurance on the aforementioned Lexus automobile and GMC pickup truck, certain gas and vehicle maintenance ex *428 penses, and health and life insurance premiums for the husband.[1]
The husband testified that he had a preexisting $1,500 monthly alimony obligation to an ex-wife. The husband also testified that there is a $270,000 judgment entered against him, and that he had personally guaranteed TME’s debts in the amount of $2,074,800.
The wife is originally from Colombia, South America. A few months after meeting the husband in the spring of 1993, the wife moved into the husband’s apartment in Alabama. She obtained a student visa and eventually graduated from the University of North Alabama (“UNA”). She also obtained a work visa, which permitted her to work at TME, where she earned approximately $250 per week.
The husband and the wife were married in January 1997. The wife testified that, in addition to assisting her with “papers” that would allow her to remain in this country with the husband, “[the husband] knows that I am a very honest person and he knew that he trust me more than he trust his own children, so he wanted to put some assets in my name.” The wife proceeded to explain that the husband had told her that he needed to “shield” some of his assets so that they would not be included in the divorce judgment between him and his ex-wife.
After graduating from UNA with a degree in international business, the wife worked for Safe Place, Inc., for approximately one and a half years, earning an annual salary of $22,000. The wife subsequently started her own business, Interpretation Services, L.L.C., which provided interpretation or translation services to courts, hospitals, schools, and individuals. At the time of the parties’ separation, however, the wife was unemployed and was attending law school at Birmingham School of Law.
At some point during their marriage, the husband became suspicious that the wife might be having an affair. The husband introduced into evidence copies of several e-mail messages that indicated that the wife might be involved in a romantic relationship with at least one other man and that stated that she intended to divorce the husband. The wife denied having had an affair, explaining that the husband was very jealous and that he thought any relationship or contact she had with a man had to involve sex. She also accused the husband of having made inappropriate comments to friends and relatives, including suggesting to the wife’s sister that the two women take turns living with him in America while the other stayed in Colombia. One of the wife’s friends, Kathy Adler, testified that on one visit to the parties’ home, upon Adler’s comment that the home was lovely and that Adler would love to live in such a home, the husband stated that he would build Adler a house on the property where he could visit her in the evenings before coming back to the main house. Adler considered this comment to be inappropriate.
For some time prior to the trial, the husband listed the marital residence for sale at a price of $1.5 million. The house is subject to three mortgages and is encumbered, in total, in the amount of $836,966.59. An appraiser called to testify by the husband opined that the house had a market value of only $850,000.
The husband owns two parcels of real property in Savannah, Tennessee; he tes *429 tified that those parcels of property are worth a total of $3,000. The wife owns two rental properties — the Roberts Lane property and the Conway Drive property. The Conway Drive property was under a contract of sale at the time of the divorce trial; however, the wife testified that the property had been under a contract of sale before but that the sale had not been consummated. The wife testified that the Conway Drive property was to be sold for $77,500 and that the payoff on the mortgage on that property was $60,961.93. The wife further testified that the Roberts Lane property was worth $85,000, with an outstanding mortgage in the amount of $50,910. The rent on the Roberts Lane property is $700 per month, which pays the $600 mortgage payment and costs associated with the upkeep of the property.
The wife regularly drove the 1999 Lexus automobile awarded to her by the trial court. Nonetheless, the husband argues on appeal that the Lexus is owned by TME and therefore that the trial court erred in awarding it to the wife. TME’s bankruptcy petition, however, does not list the Lexus as property owned by TME. According to both the husband and the wife, the loan associated with the purchase of the Lexus has been paid off but the Lexus was subsequently used by the husband as collateral for a loan for TME. The wife testified that the Lexus is worth approximately $20,000. The husband testified that the monthly payments associated with the TME loan secured by the Lexus were $1,300.
The husband regularly drove the GMC pickup truck awarded to him by the trial court. That truck is listed as an asset in TME’s bankruptcy petition. In the petition, the husband listed the value of the truck as $4,000. According to the wife’s testimony, however, the pickup truck is worth approximately $8,000.
The parties had several financial accounts, many funded originally by the husband. The wife owned a Vanguard IRA worth $14,698, a Safe Place retirement account worth $3,100, and a Fidelity mutual fund worth $3,500. The husband had a Vanguard Star Fund worth $26,096 and a Janus IRA worth $13,800. The husband also owned a Star Deck boat worth $33,000; the husband owed $30,000 on the boat at the time of trial.
On appeal, the husband first argues that the trial court’s order requiring him to pay $1,500 per month in alimony for a period of 24 months should be reversed. The record reflects that the mortgage payments, the husband’s preexisting alimony obligation, the husband’s alimony obligation to the wife, and the Lexus payment total $9,300 per month. Citing Wheeles v. Wheeles, 770 So.2d 635 (Ala.Civ.App.2000), the husband contends that this amount exceeds his ability to pay and would “financially cripple” him. The wife counters by pointing out that TME paid for all the marital expenses, so that the trial court could properly have determined that the husband received more monthly income than is reflected only in his salary.
“Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are ‘unsupported by the evidence or [are] otherwise palpably wrong.’ ” Ex parte Bland, 796 So.2d 340, 344 (Ala.2000) (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990)). Also, when, as in this case, a trial court’s judgment is based on ore tenus evidence, the judgment is presumed correct. Kennedy v. Kennedy, 743 So.2d 487 (Ala.Civ.App.1999). The presumption of correctness under the ore ten-us rule “is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility.” Glazner v. Glazner, 807 So.2d 555, 559 *430 (Ala.Civ.App.2001); see also Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).
Matters . such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993); and Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996).
In dividing property and awarding alimony, a trial court should consider “the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the-parties’] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce.” Russell v. Russell, 777 So.2d 731, 733 (Ala.Civ.App.2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996); and Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). “A property division that favors one party over another does not necessarily indicate an abuse of discretion.” Fell v. Fell, 869 So.2d 486, 496 (Ala.Civ.App.2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala.Civ.App.1988)).
“[T]he purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.”
O’Neal v. O’Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996).
It is true that the husband’s business, TME, is operating in the context of a Chapter 11 bankruptcy proceeding and that, like many businesses, TME has more debts than assets. Nonetheless, the husband does continue to operate TME in such a manner that it is able to pay the husband a $52,000 annual salary and additional income in the form of thousands of dollars per month in mortgage payments and numerous other living expenses.
In addition, substantial evidence was introduced as to the husband’s mistreatment of the wife, evidence from which the trial court could have drawn inferences adverse to the husband as to the cause of the parties’ divorce. Russell, 777 So.2d at 733 (trial court may consider the conduct of the parties in relation to the cause of the divorce in awarding alimony). Further, the trial court had the responsibility for making credibility determinations as to the husband and the wife, as well as for deciding how to weigh the evidence before it. Glazner, 807 So.2d at 559.
In light of the foregoing, and given the deference owed by this court to the trial court’s credibility determinations and its decision as to how to weigh the evidence, we must conclude that the record contains sufficient evidence to support the trial court’s award to the wife of $1,500 per month in alimony for a limited period of 24 months.
The husband also challenges the division of the parties’ marital property. In particular, the husband takes issue with the award of the Lexus automobile to the wife and the trial court’s order that the husband pay the debt now secured by that automobile.
■ We conclude that there was substantial evidence from which the trial court could *431 have concluded that the Lexus automobile was, in fact, not owned by TME. As previously noted, the Lexus was not listed as an asset in the schedules filed by TME in its bankruptcy proceeding. In addition, neither party offered into evidence a certificate of title with respect to the Lexus. Based on this record, we cannot conclude that the trial court erred in awarding the Lexus to the wife.
As for the issue of the monthly payment on the debt secured by the Lexus, the husband argues, in part, that the wife caused the breakup of the marriage and that this “fact” weighs against requiring the husband to pay the debt on the Lexus. We have already addressed the conflicting evidence before the trial court as it relates to the division of the marital assets, among other things, as well as the trial court’s responsibility for weighing the evidence and making necessary credibility determinations. Given the record before us, the husband’s argument in this regard provides us with no basis for reversing the trial court’s judgment.
The loan associated with the purchase of the Lexus has been paid in full and the loan now secured by the Lexus was obtained for the benefit of TME. The requirement that the husband make the payments on this loan is consistent with the award to the husband of all of the assets and debts of TME. Nonetheless, the husband further contends that he simply does not have the funds to make the payments on this loan. We already have addressed the evidence that supports the trial court’s apparent conclusion that the husband’s income includes far more than his annual salary. On the basis of that same evidence, and given the deference owed by this court to the trial court’s consideration of that evidence and the discretion afforded the trial court in dividing marital assets, we cannot conclude that the trial court erred to reversal in requiring the husband to pay the debt on the Lexus.[2]
Finally, the husband takes issue with the attorney-fee award made by the trial court. Citing Korn v. Korn, 867 So.2d 338 (Ala.Civ.App.2003), for the proposition that an award of attorney fees is within the discretion of the trial court, the husband argues that the trial court abused its discretion in this case because he is without funds to pay the attorney fees, that the wife has been awarded sufficient assets from which to pay her own attorney fees, that the wife’s conduct precipitated the divorce, and that the amount of the fee awarded is excessive. Again, based on our review of the record, much of which is discussed above, and given the deference owed to the trial court in its exercise of discretion in the awarding of attorney fees in a divorce case, we cannot conclude that a basis for reversing the trial court has been presented to us.
The wife’s request for the award of an attorney fee on appeal is denied.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The wife testified that TME paid all of the marital bills and was paying for a new boat for the husband.

. We also would add that, although the wife was awarded several financial accounts, there was substantial evidence introduced at trial indicating that she would be penalized for an early withdrawal of funds from some of those accounts.