Rel: January 17, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0336

_____

## Sandra Robinson

## v.

## Johnny M. Robinson

## Appeal from Clarke Circuit Court
## (DR-22-900018)

EDWARDS, Judge.

Sandra Robinson ("the wife") appeals from a judgment entered by the Clarke Circuit Court ("the trial court") divorcing her from Johnny M. Robinson ("the husband"). We reverse the trial court's judgment and remand the cause with instructions.

The parties married on September 1, 1973, and both the husband and the wife were 68 years old at the time of the trial. Three children were born of the parties' marriage, and all three had reached the age of majority and were self-supporting by the time of the trial. During the marriage, the husband served in the military and, as a result of his military service, the parties had resided in Europe, Florida, North Carolina, Texas, and New Jersey. The husband stated that the wife had cared for the parties' children and that she and the children had joined him each time that he was relocated while serving in the military. He testified that he had retired from the military in 1993 and that the parties had moved to Jackson, where, he said, they have since resided. The husband testified that the parties had moved to a house that had been built on land given to him by his grandfather and that, in 2000, the parties had built a new house ("the marital residence") on that land, with the husband acting as the general contractor on the project. The parties agreed that the marital residence had appraised for $275,000. The husband testified that, at the time of the trial, the marital residence was encumbered by a mortgage to Citibank with a balance of $154,000. Both parties continued to reside in the marital residence at the time of the

2

trial, and both requested that they be awarded the marital residence. The wife admitted, however, that she was unable to pay the mortgage on the marital residence.

The husband testified that, at the time of the trial, he was receiving disability benefits in the amount of $3,603 per month from the United States Department of Veterans Affairs, military-retirement benefits in the amount of $2,305 per month, and Social Security disability benefits in the amount of $1,795 per month. He stated that he also receives $800 per month from a rental property ("the rental house") that he had purchased in 2007 or 2008; according to the husband, the rental house had appraised for $90,000 and is encumbered by a commercial loan to SmartBank that had a balance of $39,000 at the time of the trial. The wife testified that the rental house is in both parties' names and that it is worth approximately $150,000. She stated that the rental house is occupied by tenants but that the lease agreement includes a clause that allows the parties to request that the tenants vacate the property.

The husband testified that the wife had worked "on and off" during the marriage but that she had never contributed to the household expenses. He testified, however, that she had begun purchasing

3

groceries "every now and then" since he had filed for a divorce. The husband stated that the wife drives a Toyota Camry ("the Camry") automobile, that he had given her $1,000 toward the purchase of the Camry, and that he had paid the insurance on the Camry until the wife had begun earning $250 per week working as a sitter for an elderly person. According to the husband, the wife had paid off the debt on the Camry. He stated that he owns three additional vehicles, none of which have any associated debt. Additionally, the husband testified that he owns approximately $25,000 in cryptocurrency and that he has other financial accounts with a total value of approximately $3,000. The husband presented a list of his monthly household expenses, which total $4,442 and include expenses for himself and the wife, as well as their 14-year-old granddaughter, who resides with them in the marital residence. When asked whether he and the wife had accumulated certain debts during the marriage, the husband responded: "Well, I've accumulated them." He presented as an exhibit an outline of his debts, which included the debts associated with the marital residence and the rental house, a debt that he owed to JG Wentworth for consolidating several separate debts and establishing payment plans with those creditors, and

4

additional debts to Citibank, SmartBank, and Chase; that exhibit indicates that the husband pays $3,114 each month to satisfy those debts.

The wife testified that, during the marriage, she had worked for the federal civil service each time the family was stationed somewhere new for the husband's military service. The parties testified that they had separated at an earlier point in the marriage and that the wife had moved to Montgomery for a period, but that they had reconciled since that time. According to the wife, she had worked as a sitter for an elderly couple for one to two years and that employment had ended approximately two years before the trial. She testified that the amount that she had earned from that employment had varied; that she had not filed taxes on those earnings; that she had used the money she earned as a sitter to pay the debt associated with the Camry, a car-insurance premium, clothes, and payments for extensive dental work that she had undergone; and that she did not have any money remaining from that employment.

According to the wife, her income at the time of the trial included $1,138 in Social Security benefits and approximately $240 in gross income per week from her employment with the City of Jackson driving meals to the elderly, although she stated that her income from that

employment fluctuates. The wife testified that, during the marriage, the parties had contributed their earnings into one joint account that had been used to pay the marital bills until 2017, when she had purchased the Camry, after which the husband had removed his money from the parties' joint account and had opened a new account in his own name. She stated that the husband had since declined her offers to assist with the payment of household bills. The wife presented evidence of her monthly expenses at the time of the trial that total approximately $1,356.56;[1] those expenses do not include amounts related to the marital residence or other housing. The wife also presented as an exhibit an outline of her debts, which indicates that she pays $300 per month toward amounts owed to Mastercard, Military Star, and USAA, and $60 per month for a cellular phone.

---

[1]The wife's exhibit outlining her monthly expenses reflects a total of $1,834; however, the wife admitted during her testimony that the amount of $572.93 included in that exhibit for automobile insurance represented the amount she owed for her automobile insurance every 6 months. Accordingly, we adjusted the total amount of the wife's monthly expenses in consideration of that testimony. ($572.93 ÷ 6 = $95.49; $572.93 - $95.49 = $477.44; $1,834 - $477.44 = $1,356.56).

The wife testified that she had filed for a divorce from the husband twice during the marriage because the husband had engaged in an extended relationship with another woman. The husband testified that the parties had separated in March 2022 and that he had decided to file for a divorce because he was "tired of being lied to" and "cheated on."

Procedural History

On March 8, 2022, the husband filed a complaint in the trial court seeking a divorce from the wife and an equitable division of the marital assets. On September 8, 2022, the wife filed an answer to the husband's petition and a counterclaim for a divorce from the husband; she requested, among other things, an award of alimony, an equitable division of the marital assets, and an award of attorney's fees. On December 13, 2023, a trial was conducted. On that same date, the trial court entered a final judgment that, among other things, divorced the parties; awarded the marital residence to the husband and directed him to pay all indebtedness owed thereon; awarded the rental house to the wife and directed her to pay all indebtedness owed thereon; directed the husband to pay the indebtedness owed to JG Wentworth, Citibank, SmartBank, and Chase; directed the wife to pay the indebtedness owed

7

to Mastercard, Military Star, and USAA; awarded the wife the Camry and awarded the husband all other vehicles owned by the parties; awarded each of the parties one-half of the value of the cryptocurrency account; awarded the parties all right, title, and interest in other financial accounts in his or her individual name; directed the parties to pay all other debts incurred in his or her own name; directed that each party receive all right, title, and interest in his or her individual retirement, pension, or 401(k) plans; directed the husband to pay to the wife $300 per month for a period of 24 months as alimony; and directed that all remaining relief requested was denied. On January 12, 2024, the wife filed a motion to alter, amend, or vacate the trial court's judgment. On April 5, 2024, the trial court entered an order denying the wife's postjudgment motion. On May 12, 2024, the wife filed her notice of appeal to this court.

The wife argues on appeal that the trial court erred regarding its division of the marital property and its award of alimony to the wife. In Turnbo v. Turnbo, 938 So. 2d 425, 429-30 (Ala. Civ. App. 2006), this court outlined the applicable standard of review:

"'Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are "unsupported by the evidence or [are] otherwise palpably wrong."' Ex parte Bland, 796 So. 2d 340, 344 (Ala. 2000) (quoting Ex parte Jackson, 567 So. 2d 867, 868 (Ala. 1990)). Also, when, as in this case, a trial court's judgment is based on ore tenus evidence, the judgment is presumed correct. Kennedy v. Kennedy, 743 So. 2d 487 (Ala. Civ. App. 1999). The presumption of correctness under the ore tenus rule 'is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility.' Glazner v. Glazner, 807 So. 2d 555, 559 (Ala. Civ. App. 2001); see also Hall v. Mazzone, 486 So. 2d 408, 410 (Ala. 1986).

"Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So. 2d 358 (Ala. 2000); Parrish v. Parrish, 617 So. 2d 1036 (Ala. Civ. App. 1993); and Montgomery v. Montgomery, 519 So. 2d 525 (Ala. Civ. App. 1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So. 2d 118 (Ala. Civ. App. 1996)."

The wife argues that the trial court's division of the marital property is inequitable and that its award of alimony to the wife is insufficient. We first consider the wife's argument regarding the trial court's award of alimony. Section 30-2-57, Ala. Code 1975, provides, in pertinent part:

"(a) Upon granting a divorce or legal separation, the court shall award either rehabilitative or periodic alimony as provided in subsection (b), if the court expressly finds all of the following:

9

"(1) A party lacks a separate estate or his or her separate estate is insufficient to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) The other party has the ability to supply those means without undue economic hardship.

"(3) The circumstances of the case make it equitable.

"(b) If a party has met the requirements of subsection (a), the court shall award alimony in the following priority:

"(1) Unless the court expressly finds that rehabilitative alimony is not feasible, the court shall award rehabilitative alimony to the party for a limited duration, not to exceed five years, absent extraordinary circumstances, of an amount to enable the party to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) In cases in which the court expressly finds that rehabilitation is not feasible, a good-faith attempt at rehabilitation fails, or good-faith rehabilitation only enables the party to partially acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, the court shall award the party periodic installments of alimony for a duration and an amount to allow the party to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage as provided in subsection (g)."

In the present case, the trial court's judgment states, in pertinent part:

> "The [husband] is hereby ordered to pay the [wife] the sum of $300.00 per month for a period of twenty-four months as alimony. The Court has considered the length of the parties' marriage, their ages, health, station in life, and future prospects; the sources, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce. The Court has considered the fact that the [husband] has monthly income of $7,703.00 (excluding the rental income for the home the [wife] is awarded) and the [wife] has income of $1,138.00. A larger amount of monthly alimony nor a longer period of time for payment was not awarded because the amount of debt the [husband] is being required to pay far exceeds the amount of debt the [wife] is being required to pay. The Court finds the award of alimony to be proper, given a consideration of all factors."

In its order denying the wife's postjudgment motion, the trial court essentially restated those same findings, reiterating that "the amount of debt the [husband] is required to pay as opposed to the amount the [wife] will be required to pay justifies the lack of a larger amount of alimony," and concluding that it had "considered the income, debts, and assets awarded to each party and reached the conclusion the Court felt was proper under the circumstances."

11

In <u>Lopez v. Rodriguez</u>, 379 So. 3d 455, 461 (Ala. Civ. App. 2023), this court considered an argument that the division of property and the award of alimony in a divorce judgment were inequitable. In reversing the judgment in that case, this court stated, in pertinent part:

"As to the periodic-alimony award, in <u>Merrick v. Merrick</u>, 352 So. 3d 770 (Ala. Civ. App. 2021), this court discussed the application of Ala. Code 1975, § 30-2-57, stating: 'The legislature has clearly required that an alimony award be either rehabilitative alimony or periodic alimony and that, to award either type of alimony, the trial court must make certain express findings ....' 352 So. 3d at 775. Those requirements include findings as to those matters discussed in § 30-2-57(a), Ala. Code 1975, and, if a periodic-alimony award is to be made, a finding 'that rehabilitative alimony is not feasible,' § 30-2-57(b)(1), Ala. Code 1975, based upon the trial court's consideration of the various factors described in § 30-2-57(d) & (f), Ala. Code 1975.

"The wife testified that she wanted alimony until she could 'get on [her] feet,' which she stated would take three or four years. The husband agreed that the wife should receive some alimony and that it should be paid for three or four years. The trial court couched its alimony award in terms of it being 'periodic alimony'; however, in light of the wife's testimony and the duration of the alimony award, it may have been rehabilitative alimony, which this court has described as a type of periodic alimony that is intended to allow the recipient spouse to establish a self-supporting status. See <u>Merrick</u>, 352 So. 3d at 772. Nevertheless, the legislature has clearly directed that a trial court must make express findings as to the establishment of the basis for an alimony award and as to the specific type of alimony that is awarded. As in <u>Merrick</u>, '[w]e cannot properly review the award in this case

12

without having before us the express findings required by § 30-2-57.' 352 So. 3d at 775."

379 So. 3d at 461-62. Quoting Turnbo, 938 So. 2d at 430, for the proposition that "'[t]he issues of property division and alimony are interrelated, and they must be considered together on appeal,'" this court pretermitted any discussion regarding the equity of the division of the marital property and reversed the judgment in that case with instructions that, on remand, the trial court enter a new judgment in compliance with § 30-2-57 and that it reconsider the division of the marital property in conjunction with any alimony determination. 379 So. 3d at 462.

In the present case, like in Lopez, the trial court failed to make the express findings required by § 30-2-57(a) and § 30-2-57(b)(1), and the divorce judgment does not specify the type of alimony awarded. Accordingly, like in Lopez, we reverse the trial court's judgment, and we remand the case to the trial court with instructions that it enter a new judgment in compliance with § 30-2-57. Because the issues of property division and alimony are interrelated and must be considered together on appeal, see Turnbo and Lopez, supra, we pretermit any discussion

13

regarding the equity of the division of the marital property in this case, and we instruct the trial court, on remand, to reconsider the division of the marital property in conjunction with its determination of alimony.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.