THOMPSON, Presiding Judge.
*664 Mark Cameron ("the husband") appeals from a judgment of the Lee Circuit Court ("the trial court") divorcing him from Wendy Cameron ("the wife"), dividing the marital assets, and awarding the wife periodic alimony, among other things.
The record indicates the following. The parties married in April 2009 but had lived together since July 2003. The husband testified that, during the time they were living together before the marriage, the parties had not held themselves out as husband and wife. He said that they did not file joint income taxes or have a joint checking account and that the wife did not take his name until after they married. The wife did not dispute the husband's contentions.
Both the husband and the wife have children from previous marriages, all of whom were adults at the time of the divorce trial. The husband was 55 years old at the time of the trial, and the wife was 50 years old. The wife has custody of her son's children pursuant to a safety plan initiated by the Department of Human Resources.
The husband has worked as a truck driver for approximately 30 years. His gross annual income at the time of the trial was approximately $68,000. He testified that he has a 401(k) retirement account that he has paid into for 30 years. At the time of the trial, the account had a value of $292,467.91. The husband testified that he had purchased the house that became the marital residence in late December 1995 or January 1996. According to a list of assets submitted by the husband, the house had a value of approximately $90,000 and a mortgage debt of approximately $52,000. The monthly mortgage payment was $648. The husband also said that he had paid "every one" of the household bills since he moved into the house.
The wife testified that she had contributed $400 each month toward the mortgage payments from July 2003 until 2013, when she was involved in a motor-vehicle accident. She received a settlement of $58,000. After buying furniture for the marital residence, repaying a loan of $5,000 to one of her children, and giving each of her children $1,500, the wife said, she had approximately $23,000 remaining from the settlement. The wife said that she had attempted to give the husband $10,000, but, she said, he had told her he did not want her money. The wife said that she did give him $4,000 out of her settlement proceeds.
The wife worked when the parties first married. However, the husband said, the wife was "let go" from her job in 2010 or 2011 and had not worked since. The wife testified that she lost her job in November 2012. The husband testified that he had "gotten in her face a couple of times and told her to get out and get a job." He said that he worked 60 to 70 hours a week as a truck driver and that he could not "stand to see somebody sitting around." The husband said that the wife claimed she had hurt her back, but he could not say whether the pain was "real or not" because he is not a doctor. He said that her back pain had not affected her ability to enjoy camping and fishing. The wife testified that she is disabled and under the care of a pain-management physician and that she has taken a number of medications for pain she has suffered since the automobile accident.
The husband claimed that the parties had had sexual relations three times in the three years leading up to the trial in December 2015. He said that the last time they had sex was in February or March 2015. He testified that he and the wife *665 maintained separate bedrooms but that the wife would "sneak in at night and lay down" with him. He also testified that they no longer had anything in common except fishing. The wife denied that they slept in different bedrooms or that she sneaked into bed with the husband. She said that they continued to sleep in the same bed after the husband filed for the divorce. Furthermore, she testified, they had sexual relations about once a week even after the husband filed the complaint for a divorce. She said that the two had had sex the week before the trial.
The wife discovered that the husband had been "sexting" with another woman.[1] The husband claimed that his relationship with the other woman had not involved physical sexual relations and that he had ended that relationship. The wife, however, testified that, on a recent trip, she had discovered that the husband had a second telephone that he used to contact the other woman and that their relationship was ongoing.
The wife did not want to divorce the husband. She testified that, between the time the husband filed the complaint for a divorce and the December 2015 trial, the husband told her that he was going to "call off" the divorce. She said that they had a conversation about not obtaining a divorce as recently as the week before the trial. They had also made plans to attend a birthday party together the weekend after the trial. The husband conceded that the parties went camping, hunting, and fishing together. However, he said, the wife joined him on the trips without being invited, and, he said, he did not want her to come along. The evidence also showed that, in the weeks just before the trial, the husband had told one of the wife's children that he loved another woman and no longer loved the wife. The wife also acknowledged that she had learned months before the trial that the husband did not intend to call off the divorce.
Stephanie Elliott, one of the wife's children, testified that the husband was the only father she knew.[2] She testified that, while the trial was underway, she overheard the husband tell the wife "he would like to put [the divorce] off but he wanted to hear what the Judge had to say." Elliott said that, to see the parties together, with the exception of a few arguments, one would never know they were going through a divorce. She said that they talked about the future and purchased items to decorate the house. However, Elliott also said that she had told the wife that the husband was just "leading her on" when he talked about "calling off" the divorce.
Elliott testified that she and the husband had talked the month before the trial and that the husband had told her he was still seeing the other woman. He told Elliott she "should let him go because he was a piece of crap." He also told Elliott that he was sorry but that he was in love with the other woman. Rebecca Savage, the wife's other daughter, corroborated Elliott's testimony. The husband testified that he "lied" to Elliott and Savage "to get them off [his] case" and that he did not love another woman.
The husband testified that, during the marriage, the parties had purchased the vehicle the wife was driving at the time of the trial, an all-terrain vehicle ("ATV"), which the husband said cost $4,000, a fishing boat that had a debt of approximately $32,000, and a camper.
On December 15, 2015, the trial court entered a judgment divorcing the parties on the ground of the irretrievable breakdown *666 of the marriage, "largely extending from the Husband's unwillingness to truthfully consider reconciliation, although he has deceived the Wife at times into thinking he would." In the judgment, the trial court explicitly stated that the husband showed "little if any credibility." The trial court wrote:
"As a witness in Court, the Husband was contradictory and evasive and generally not believable. At home he has led his wife and family along as if there would be a reconciliation between them. At Court, and to his friend, he indicates no interest in maintaining the relationship. He has tried to enjoy the benefits his wife can provide at home or in their camper, but he is no longer willing to be bound by any commitment to her."
In dividing the marital property, the trial court awarded the wife the marital residence and ordered the husband to continue to pay the mortgage of $648 each month. The wife received a Chrysler minivan, the parties' camper, a Pro Craft boat, her jewelry and clothing, and specific personal property. The husband was awarded a Dodge truck, a Nissan truck, a Skeeter boat, valued at $32,000, a Ranger boat, a Harley Davidson motorcycle, the ATV, his savings account valued at approximately $6,000, the parties' 2014 tax refunds in the amount of $5,125, his jewelry and clothing, and specific personal property. The husband was also awarded his entire 401(k) account, worth approximately $292,000. Any property not specified in the judgment was awarded to the party who had possession of such property on the date of the judgment. According to the wife, at the time of the trial she had $754 in her checking account and $54 in her savings account.
In addition to the division of marital property, the husband was ordered to pay the wife $10,000 alimony in gross, $1,000 each month in periodic alimony, and rehabilitative alimony of $225 each month for 18 months. The trial court also directed the husband to pay the wife's COBRA health-insurance premiums for 18 months.
The husband filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. After a hearing on the motion, the trial court determined that the amount of combined alimony was too great considering that the wife would not have a house payment. It lowered the amount of periodic alimony to $856.50 each month, and it removed the husband's obligation to pay $225 each month for rehabilitative alimony. The trial court stated that the change made the amount of money available to each party each month substantially equal. The husband then appealed the judgment to this court.
The husband contends that the trial court abused its discretion in awarding the wife periodic alimony and in dividing the marital property.
" 'Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala. 2000) ; Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993) ; and Montgomery v. Montgomery, 519 So.2d 525 (Ala. Civ. App. 1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ. App. 1996).
" 'In dividing property and awarding alimony, a trial court should consider "the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties'] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce."
*667 Russell v. Russell, 777 So.2d 731, 733 (Ala. Civ. App. 2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996) ; and Brewer v. Brewer, 695 So.2d 1 (Ala. Civ. App. 1996). "A property division that favors one party over another does not necessarily indicate an abuse of discretion." Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala. Civ. App. 1988) ).'
" Turnbo v. Turnbo, 938 So.2d 425, [430] (Ala. Civ. App. 2006)."
Walker v. Walker, 216 So. 3d 1262, 1270-71 (Ala. Civ. App. 2016). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala. Civ. App. 1994).
The parties were married only seven years. Therefore, the husband's 401(k) account was not a marital asset subject to division. Brasili v. Brasili, 827 So.2d 813, 821 (Ala. Civ. App. 2002) ; § 30-2-51(b), Ala. Code 1975. Accordingly, it appears that the parties' largest single asset was the marital residence, which the husband purchased approximately 13 years before the parties married. The husband was not awarded any portion of the equity in the marital residence, although he was ordered to pay the remaining balance on the mortgage, which was approximately $52,000, at the rate of $648 each month. Neither party raised an issue regarding whether the wife's settlement resulting from the motor-vehicle accident constituted marital property subject to division.
The record is silent as to the value of much of the property divided between the parties. No evidence was presented as to the value of the marital residence or the value of most of the vehicles awarded to the parties in the judgment.[3] In Combs v. Combs, 4 So.3d 1141 (Ala. Civ. App. 2008), this court was asked to consider whether a judgment dividing marital property and awarding alimony was inequitable. After noting that the wife in that case was awarded "some marital assets but no marital liabilities," we wrote:
"However, the record contains no valuation evidence as to the automobile, the truck, the business, or the parties' personal property. Further, the only evidence regarding the amount of [the] husband's expenses is that his alimony payments are $400 and the mortgage payment is $166. There is no evidence as to the amount of the monthly payments for the automobile, the truck, the motor-vehicle liability insurance, the business loan, or the payment on the four-wheeler. Without that information, it is impossible for us to determine whether those payments consume the husband's monthly income and financially cripple him, as he argues. 'A party who complains of error by the trial court must affirmatively show from the record on appeal that such error was in fact committed.' Walnut Equip. Leasing Co. v. Graham, 532 So.2d 655, 655 (Ala. Civ. App. 1988)."
Combs, 4 So.3d at 1149.
Similarly, in this case, because the parties failed to introduce evidence of the value of most of the assets, including the *668 marital residence, specifically included in the judgment dividing the marital property or the items of personal property that were awarded to the parties, we are unable to conduct a meaningful review of whether the property division is equitable. Accordingly, we cannot say that the trial court's judgment dividing the marital property is plainly and palpably wrong.
The husband also asserts that, as he demonstrated in the exhibits attached to his postjudgment motion, he does not have the financial ability to meet the monthly payments the trial court ordered him to pay the wife. In his appellate brief, the husband does not argue that the wife failed to demonstrate a need for periodic alimony. Thus, any argument the husband could have made regarding whether the wife demonstrated a need for periodic alimony is deemed waived. Edosomwan v. A.B.C. Daycare & Kindergarten, Inc., 32 So.3d 591, 593 (Ala. Civ. App. 2009) (citing Tucker v. Cullman-Jefferson Ctys. Gas Dist., 864 So.2d 317, 319 (Ala. 2003) )(stating that issues not raised and argued in brief are waived).
" '[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.' O'Neal [v. O'Neal ], 678 So.2d [161] at 164 [ (Ala. Civ. App. 1996) ] (emphasis added). However, '[t]he amount awarded to one spouse should not "cripple" the other spouse.' Daugherty v. Daugherty, 579 So.2d 1377, 1380 (Ala. Civ. App. 1991)."
Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala. Civ. App. 1998).
The record in this case shows that the monthly obligations imposed on the husband in the judgment include a mortgage payment of $648, periodic alimony of $856.50, and COBRA payments for the wife's health insurance for 18 months. According to a letter from the husband's employer's benefits specialist that was attached as an exhibit to the husband's postjudgment motion, the COBRA payments for the wife would be $424.86 each month. Therefore, pursuant to the divorce judgment, the husband must pay a total of $1,929.36 in court-ordered payments each month.
The husband submitted his affidavit in support of his postjudgment motion. In his affidavit, and in his brief on appeal, the husband asserts that his gross income for 2014 was $68,315. However, his W-2 form for 2014 indicates that his gross income was $74,264.85 and that his taxable income was $68,315. In its amended judgment, the trial court found that, in 2014, the husband earned $54,060 in net income, or $4,505 a month in take-home pay. The husband contends that his net pay in 2014 was $41,122 and that his monthly take-home pay was $3,426; however, this court cannot determine from the record how the husband reached those figures, and no documentary evidence or testimony supports those figures. In considering the deductions listed on the husband's W-2 form, it appears that the trial court's calculations are correct, and we certainly cannot say that the trial court's calculations are not supported by the evidence. In his affidavit, the husband provided a list of estimated monthly expenses, including rent but excluding the payments he must make to the wife, which totaled $2,339. Using the trial court's figure of $4,505 as the husband's monthly net pay, the husband would be left with approximately $2,166 a month after his expenses are paid. After paying $1,929.36 to meet his court-mandated expenses, the husband would be left with approximately $237 a month. Accordingly, we cannot say that the husband does not have the ability *669 to pay the wife the amounts the trial court ordered.
The husband also contends that the trial judge should have recused himself after allegedly making a comment to the husband's attorney that, as set forth in the husband's motion to recuse, "You might want to speak with your client, and if he still wants a divorce I'm going to hit him hard financially." The comment was apparently made after the trial of the case. In the motion to recuse, the husband asserts that the trial judge admitted to the posttrial mediator that he had made the comment.
However, the alleged comment does not appear in the record on appeal. The husband's attorney did not attach an affidavit (either her own or the mediator's) to the recusal motion, and she took no steps to supplement the record pursuant to Rule 10(f), Ala. R. App. P. Statements made in briefs are not evidence. ("[A]n Geer Bros. v. Walker, 416 So.2d 1045, 1049 (Ala. Civ. App. 1982) appellate court cannot consider statements in brief that are not supported by the record."). Thus, the husband's assertions regarding the statement allegedly made by the trial judge cannot be the basis for reversal of the trial court's denial of the motion to recuse. Accordingly, we find no basis for determining that the trial judge erred in denying the husband's motion requesting that the trial judge recuse himself.
For the reasons set forth above, the judgment is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

"Sexting" is sending a sexually explicit text message from a cellular telephone.

It appears from the record that the wife's first husband died.

Before the trial, the parties submitted "Lee County Family Court's Divorce Disclosure Forms" to the trial court. On his forms, the husband estimated values for a number of the parties' assets, including the marital residence. However, those forms were not introduced as evidence during the trial.