Rel: May 16, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0809

_____

## K.J.P.

## v.

## B.W.P.

### Appeal from Madison Circuit Court
### (DR-22-900949)

LEWIS, Judge.

K.J.P. ("the wife") appeals from a judgment entered by the Madison Circuit Court ("the trial court") divorcing her from B.W.P. ("the husband") to the extent that the judgment divided the parties' property. We affirm the trial court's judgment.

## Procedural History

On November 4, 2022, the husband filed a complaint seeking a divorce from the wife. On January 26, 2023, the wife answered the complaint and counterclaimed for a divorce. The husband thereafter filed a reply to the wife's counterclaim. After a trial on August 7, 2024, the trial court entered a judgment on August 15, 2024, that, among other things, divorced the parties, divided the parties' property and debts, declined to award either party alimony, and awarded sole custody of the parties' children to the husband. With respect to the division of the parties' property and debt, the judgment specifically provided:

"14. The [w]ife is hereby awarded the following property: the personal property as listed below, together with all of the [w]ife's personal property and effects:

"A) 2011 Toyota Sienna, which has an indebtedness thereon, and the [w]ife shall make all payments, forever holding the [h]usband harmless.

"B) All items on '[the wife's] Exhibit 14,' with the exception of those items disagreed/marked out by the [h]usband.

"C) All checking, savings, and money market accounts in her individual name.

"15 The [h]usband is awarded the following personal property as listed below, together with all of the [h]usband's

2

personal property and effects together with the following property:

"A) 2003 Honda Accord, which is paid for.

"B) Ford Bronco, which is paid for.

"C) All items of personal property owned by him prior to the marriage, inherited by him, given to him by his family and/or by the [w]ife, his personal items and belongings; and

"D) All checking, savings, and money market accounts in his individual name.

"....

"16. The [p]arties are joint owners of real estate located [in] Madison [County].... The evidence presented showed that the property is in the parties' joint names, with the [h]usband solely liable for the indebtedness thereon. Accordingly, the property, and any equity therein, shall be awarded to the [h]usband, with the [h]usband paying all indebtedness thereon, and forever holding the [w]ife harmless therefrom. The [w]ife shall execute a Statutory Warranty Deed to the [h]usband, conveying all interest she has therein, upon entry of this Order. The [h]usband's counsel shall be responsible for the drafting of said Deed.

"....

"17. The evidence revealed that the [w]ife previously liquidated her retirement account, during this action, and that the [h]usband is employed with the City of Huntsville. Accordingly, each party shall be awarded his or her individual retirement accounts and/or benefits, received through employment or otherwise.

"….

"9. The [h]usband is ORDERED to pay and be responsible for all debts in his individual name and is further Ordered to indemnify and hold the [w]ife harmless from any and all liability thereon until the same have been paid in full ….

"20. The [w]ife is ORDERED to pay and be responsible for all following debts in her individual name, and is further Ordered to indemnify and hold the [h]usband harmless from any and all liability thereon until same have been paid in full ….

"21 The [p]arties are ORDERED to close any joint credit card accounts presently held in the joint names of the parties, and are further Ordered to remove the other [party's] name from said accounts. Neither party shall charge on any credit account herein assumed to be paid by the other party. In the event any such charge has been made after the date on which this Order was entered, the party making said charge shall be solely responsible for payment of any such charge."

On September 16, 2024, the wife filed a postjudgment motion; that motion was denied on September 26, 2024. The wife filed her notice of appeal with this court on October 18, 2024.

## Evidence

The parties were married in 2009. At the time of the trial, the husband was 43 years old, and the wife was 44 years old. The husband testified that he graduated from high school and attended some college courses. He testified that he is in good health and is employed by the

City of Huntsville, earning $5,489.04 monthly. The wife testified that she graduated from college and is employed by Oakwood Health as an outreach executive, earning $42,000 per year. She testified that she also has the potential to earn bonuses.

According to the husband, the first problems in the parties' marriage occurred in 2010 when the wife began abusing Klonopin, muscle relaxers, and alcohol. He testified that he reported the wife's drug abuse to her physician and that the physician stopped prescribing the Klonopin. The husband testified that, in 2016, the wife began staying up all night sitting on the floor surrounded by multiple Bibles. He testified that the wife believed that a church had placed surveillance cameras and listening devices in their home and that a traveling evangelist was following her. According to the husband, one day he came home from work, and the wife had taken their two young children and left the marital home. He testified that the wife would not answer her cellular telephone. Ultimately, the husband located the wife in Kentucky, and the wife's father telephoned a mobile crisis unit to take the wife to Vanderbilt University Hospital. The wife was hospitalized in the mental-health ward there for three weeks and was diagnosed with bipolar

5

disorder. The husband testified that he filed for a legal separation after that incident, but he later dismissed the action. He testified that the wife returned home and worked multiple jobs.

The husband testified that another incident happened on Mother's Day in 2021. He testified that he telephoned the wife's cellular telephone, and someone answered and stated that the telephone had been left at a bar in Tennessee. According to the husband, he and the parties' children drove to Tennessee and witnessed the wife and a homeless man digging through a dumpster. He testified that he telephoned the police and that the police located the wife the next day. The husband testified that the wife told the police that her house had burned down. He also testified that the wife told him that the homeless man had driven her to her hotel, that she smoked marijuana with two 17-year-old males, and that the marijuana had been laced with methamphetamine. The wife asked one of the 17-year-old males to telephone her cellular telephone. The husband later texted that number pretending to be the wife, and the male texted an explicit photograph. The husband admitted that he told other people that the wife received an explicit photograph on her cellular telephone.

6

According to the husband, the wife was admitted to another mental-health facility for three weeks. She then resided at a drug-rehabilitation center for three weeks, before moving into a halfway house. The husband testified that he filed for a divorce as a result of that incident; however, he later dismissed the action. The wife moved back into the marital home in July 2021, and the wife began teaching as a substitute.

The husband testified that the incident that led to the filing of the present action occurred around Halloween 2022. He testified that the wife took their children to Tennessee and left them with her mother. According to the husband, the wife reported to the Alabama Department of Human Resources that he had abused the children. However, the children were ultimately returned to the husband. He testified that the wife did not telephone him to let him know where she was until around Thanksgiving 2022. According to the husband, the wife informed him that she had been arrested several times, once for driving under the influence and once for indecent exposure. He testified that the wife informed him that she had been living in a homeless camp with a homeless man. The husband testified that, in December 2022, the wife

7

came to the marital home asking for money and threatened to burn down the marital home.

The wife admitted that she drank alcohol throughout the month of December in 2022 and that, at one point, she purchased a round of drinks for all the people in a bar. She admitted that she charged $24,000 on a credit card from November 2022 until February 2023 on hotel bills, alcohol, gas, vaping products, and eating out. She testified that she had traveled in the state of Tennessee with the homeless man she had met.

The husband testified that the wife began living with her grandfather in Tennessee in February or March 2023. He testified that she obtained a job and began attending their children's sporting events. He testified that the wife has given their children some clothing and shoes but has not provided monetary support. The wife testified that, between November 2022 and July 2023, she paid over $13,000 toward family expenses such as the car-insurance premium for all three vehicles and the cellular-telephone bills for the parties and one of the parties' children.

The husband testified that the marital home is valued at $359,300 and that the mortgage balance is $213,204. He testified that the monthly

payment on the mortgage note is $1,360. The husband testified that the wife owned a house before the parties married, that the parties sold that home in 2019, and that the parties realized approximately $30,000 in proceeds from that sale. He testified that they used approximately $15,000 to pay marital bills and used the remaining funds to make a down payment on the marital home. However, the wife admitted that she had not made a down payment on the home she bought prior to the marriage; that she became pregnant "a few months after [she] bought the home" and thereafter "became a stay-at-home mom"; and that the husband had worked overtime to pay that mortgage. The husband testified that the wife did not pay "a dime" toward the marital home. The wife testified, though, that she had borne the primary responsibility for keeping up the marital home and that the husband had not helped her around the house. She testified that she contributed to the marital home financially during the times in which she was employed.

According to the husband, he drives a 2003 Honda Accord and owns a classic Ford Bronco that is valued at $15,000. He testified that he has a retirement account with the State of Alabama; the wife testified that the value of that account is $33,000. The husband testified that the

parties' joint bank account has less than $1 in it and that he has very little savings. He testified that his finances are tight and that he could not afford to buy the wife out of the house or to refinance the house at a higher interest rate. He testified that the wife told him that she opened credit cards in his name in 2020; he stated that, by the time of the trial, he had paid off all the credit cards that were in his name. According to the wife, the parties lived paycheck to paycheck throughout their marriage.

The wife testified that she is feeling better and that she would not have any incidents such as the ones she had in the past. She testified that, at the time of the trial, she was living in an apartment. According to the wife, her monthly expenses total $5,436. She testified that she pays $1,777 for the apartment, and that amount includes some services. According to the wife, she spends $800 on groceries for her and the parties' children. In addition to the $24,000 the wife charged on her USAA credit card, the wife testified that she also had balances of $1,500 and $8,000 on other credit cards. According to the wife, she became overwhelmed by credit-card debt, and she obtained a debt-consolidation loan in the amount of $27,061.10, with a monthly payment in the amount

of $521.24. The wife also admitted that she cashed out her retirement account to pay attorney's fees after she was charged with driving under the influence. She testified that the charge was expunged because her blood-alcohol level was under the legal limit.

The wife testified that she cannot afford to pay her bills, but she has earned bonuses that will be paid beginning in August. The wife testified that her father paid two of her loan payments but that, once she begins receiving bonuses, she will make the payments. According to the wife, "for right now," her mother is paying for tutoring for one of the children. She also testified that someone had paid her car payment "for right now." The wife testified that her grandfather helped her pay for groceries the month preceding the trial.

According to the wife, the husband's viewing of pornography and practice of growing marijuana in the marital home caused problems in the marriage. She testified that the lights that the husband used for growing the marijuana interfered with her sleeping. The wife also testified that the husband tracked the frequency of the parties' sexual activity and confronted her with the data if it had been three or more days in between that activity.

11

## Discussion

On appeal, the wife's sole argument is that the trial court's division of property was inequitable.

> "'"The issues of property division and alimony are interrelated, and, therefore, they must be considered together on appeal. Albertson v. Albertson, 678 So. 2d 118, 120 (Ala. Civ. App. 1996). When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So. 2d 230, 235 (Ala. Civ. App. 2001); Parrish v. Parrish, 617 So. 2d 1036, 1038 (Ala. Civ. App. 1993); and Hall v. Mazzone, 486 So. 2d 408, 410 (Ala. 1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So. 2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties' marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So. 2d 729, 734 (Ala. Civ. App. 2001)."'"

Coleman v. Coleman, [Ms. CL-2024-0680, Mar. 7, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) (quoting Edwards v. Edwards, 377 So. 3d 535, 540 (Ala. Civ. App. 2022), quoting in turn Stone v. Stone, 26 So. 3d 1232, 1236 (Ala. Civ. App. 2009)).

At the time of the trial, both parties were gainfully employed and had housing. The wife had a college degree and also testified that she had the benefit of financial support from multiple family members. Both parties were relatively young. They had been married approximately 13 years at the time the divorce action was commenced.

The evidence indicated that the husband made the majority of the financial contributions to the marriage, even working overtime to help pay the mortgage on the first home in which the parties lived. The wife testified that the parties had lived paycheck to paycheck, and the husband testified that he had little savings and could not afford to buy the wife out of the marital home. The wife had charged $24,000 on a credit card from November 2022 to February 2023 on hotel bills, alcohol, gas, vaping products, and eating out. The wife even admitted that, on one occasion, she purchased a round of alcoholic drinks for all the people in a bar. She also cashed out her retirement account during the pendency of this action, and there is no evidence indicating the amount that was in that account. The husband testified that the wife also opened credit cards in his name and that he had paid off the balances of those cards.

The wife specifically argues that the trial court should have awarded her a portion of the husband's retirement account. She asserts that although there was no evidence concerning her own retirement account, it likely accrued before the marriage. However, it is the appellant's burden of showing error on the record. Cameron v. Cameron, 259 So. 3d 662, 667 (Ala. Civ. App. 2016). In Cameron, this court explained that

> "because the parties failed to introduce evidence of the value of most of the assets, including the marital residence, specifically included in the judgment dividing the marital property or the items of personal property that were awarded to the parties, we are unable to conduct a meaningful review of whether the property division is equitable. Accordingly, we cannot say that the trial court's judgment dividing the marital property is plainly and palpably wrong."

259 So. 3d at 667-68. Similarly, in the present case, there is no evidence concerning the time of accrual of the wife's retirement account that she cashed out during the pendency of this action, and there is no evidence of the value of that retirement account. Therefore, "we are unable to conduct a meaningful review of whether the property division is equitable" and "cannot say that the trial court's judgment [declining to award the wife a portion of the husband's retirement account] is plainly and palpably wrong." Id. at 668.

14

The wife also argues that the trial court erred in declining to award her a portion of the equity in the marital home. However, given the wife's conduct leading to the demise of the parties' marriage, the husband's financial contributions to the marital home, the evidence indicating that the husband could not afford to buy the wife out of the marital home, and the fact that we do not know the value of the retirement account that the wife cashed out during the pendency of this action, we cannot conclude that the trial court exceeded its discretion in awarding the husband the entirety of the equity in the marital home.

## Conclusion

Based on the foregoing, we affirm the trial court's judgment. The husband's request for an attorney's fee on appeal is denied.

AFFIRMED.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs in the result, without opinion.