On Rehearing Ex Mero Motu

DONALDSON, Judge.
This court’s opinion of May 6, 2016, is withdrawn, and the following is substituted therefor.
This case is before this court for the second time on appeal. In the first appeal, we reversed the judgment of the DeKalb Circuit Court (“the trial court”) divorcing Sabrina Gail Walker (“the wife”) and Steve Allen Walker (“the husband”) because the judgment had incorporated an unenforceable, purported settlement agreement between the parties, and we remanded the cause for further proceedings. Walker v. Walker, 144 So.3d 359 (Ala.Civ.App.2013). On remand, the trial court entered a di *1264 vorce judgment after conducting a trial on all the issues. The wife appealed. In this second appeal, the wife fails to demonstrate any ground requiring reversal of the divorce judgment. We therefore affirm the divorce judgment.

Facts and Procedural History

The wife and the husband were married in 1994. Before the marriage, the wife owned what would become the marital residence on Sand Mountain and the husband owned 5.9 acres of land with a house and other land used as a trailer park in an area described as “Dug Out Valley.” Those properties became jointly owned by the parties after the marriage. During the marriage, the parties purchased 32 acres of land and another 1 acre of land on Sand Mountain (“the Sand Mountain properties”).[1] The parties have a daughter (“the daughter”) who was 16 years old when the divorce proceedings commenced.
On September 14, 2011, the wife filed a complaint for a divorce. The husband filed an answer and a counterclaim for a divorce. The parties purportedly reached a settlement agreement; however, the wife refused to sign or approve the written settlement agreement prepared by the husband’s attorney, and the husband eventually filed a motion to enforce that agreement. On July 10, 2012, the trial court entered a divorce judgment, which incorporated the purported settlement agreement prepared by the husband’s attorney. Walker, 144 So.3d at 363. The judgment placed sole physical custody of the daughter with the wife and ordered the husband to pay $400 a month in child support. The trial court ordered the husband to pay the wife $600 a month for 24 months as alimony in gross. In accordance with the purported settlement agreement prepared by the husband’s attorney, the judgment divided the marital property as follows:
“15. The [wife] is hereby awarded the marital residence and one (1) acre of land and shall assume the indebtedness to Regions Bank and hold the [husband] harmless therefrom. The [wife] shall refinance the said marital residence within sixty (60) days from the date of this Order. The [husband] shall execute whatever documents are necessary to effectuate same.

“....

“18. The [wife] shall be awarded Chrysler Town & Country van. The [husband] shall execute whatever documents are necessary to effectuate same.
“19. [The husband] shall be awarded the BBQ grill, his rings, the dining room suite and all of his personal belongings.
“20. The [husband] shall be awarded the Dug Out Valley properties, the one (1) acre tract, and the 32 acre tract [i.e., the Sand Mountain properties]. The [wife] shall execute whatever documents are necessary to effectuate same. The [daughter] shall ultimately receive the one (1) acre tract and the 32 acre tract [i.e., the Sand Mountain properties].
“21. The [husband] shall also be awarded all of the assets of Steve Walker Construction and any mobile homes.”
The wife appealed to this court. See Walker, supra. We held that a meeting of the minds between the parties never occurred regarding the timing and the manner of conveyance of the Sand Mountain properties to the daughter. 144 So.3d at 365-66. Because, we held, the parties had only agreed to agree on that issue, we reversed the judgment. Id. We remanded the cause for a trial on all issues because *1265 of the interrelatedness of the provisions in the judgment regarding property division and alimony. 144 So.3d at 366.
On January 5, 2015, on remand, the trial court conducted a trial on all the issues. Testimony showed that, during the marriage, the husband owned a contracting business with his business partner, Ed Houstan. Their business involved using heavy construction equipment. They had one full-time employee, and they hired temporary workers as needed for projects. According to the wife’s testimony, the husband had also during the marriage purchased all of Houstan’s interest in the business. The wife testified that she and the husband had compiled a statement of assets in 2007 (“the 2007 statement”), when the husband was the sole owner of the business, and that she had prepared the 2007 statement with the husband in conjunction with an application for a loan. Referring to the 2007 statement, the wife testified to the following values of equipment that, according to her, the husband still used in his business: a Freightliner truck ($10,000), a Mack truck ($80,000), a Peterbilt dump truck ($50,000), a Case backhoe ($27,000), a Cat traekhoe ($38,-000), a Track loader ($7,000), a Case “doz-er” ($34,000), a portable trailer ($1,300), and a Chevrolet Silverado truck ($17,000).
Both parties testified that the Chevrolet Silverado was damaged beyond repair in an automobile accident. The husband testified that he no longer owned the Freight-liner truck and that he never owned a Track loader. He testified that he owed Danny Wagner $41,000 and that, pursuant to a business arrangement, he was allowed to use the following equipment while Wagner held a bill of sale on them: the Case backhoe, the Cat traekhoe, and the Case dozer. The husband testified to the following values for that equipment: the Case backhoe ($18,000), the Cat traekhoe ($7,000), and the Case dozer ($12,000). He testified to the current value of the equipment he still owns: the Mack truck ($25,-000), the Peterbilt dump truck ($20,000), and the portable trailer ($1,000 to $1,300). The husband testified that he owed $30,000 in the principal amount of a bank loan for the business. Houstan testified that the husband still owes him $35,000 and that business in the construction industry had been slow since 2008. The husband reported on his tax return in 2012 an adjusted gross income of $5,802 and a profit from the construction business of $6,037.
Both parties testified that the wife had deceived the husband in financial matters. The husband testified that, early in their marriage, the wife had incurred thousands of dollars in debt with credit cards despite an agreement that they would not have credit cards. The wife testified that, even after the husband found out about her credit-card debts and those debts were paid, she continued to incur thousands more in credit-card debt. The wife testified that she manipulated their checkbook register and cut and pasted bank statements so that certain bills, such as bills for dentist visits for their daughter, appeared to be completely paid when they were not. The husband testified that $38,000 was missing from their checking account when they separated. The husband testified that they had had to continuously obtain new loans to pay for the financial problems caused by the wife.
The wife testified that, early in the marriage, the marital residence had a mortgage balance of $46,000. The parties refinanced the mortgage to increase the balance to $150,000, which the wife testified funded the purchase of Houstan’s business interest and payment on a small note owed by the husband. A few years later, the parties refinanced the mortgage again in the amount of $155,000. Testi *1266 mony showed that, in 2008, there was a principal amount of $134,000 owed on the mortgage encumbering the marital residence and $14,000 on a mortgage encumbering the Dug Out Valley properties when the parties obtained refinancing in the amount of $155,000. The new loan was to be used to pay for both mortgages. The wife handled the loan closing for the refinancing while working for a law firm. The wife altered the documentation so that the proceeds from the new loan paid for the mortgage on the marital residence but the mortgage on the Dug Out Valley properties remained outstanding. In 2009, the husband discovered that the mortgage on the Dug Out Valley properties was outstanding, and he paid that mortgage debt.
The wife testified that she neither, spent any of the missing money on luxury items nor kept the money hidden anywhere. The wife testified that her reasons for seeking a divorce on the ground of incompatibility included the husband’s temper tantrums, his control over all finances, and their fights over money. She testified that the husband had had an affair in 2002 or 2003. She testified that then- last fight before the separation was over the checking account. The husband testified that the wife was at fault for the divorce because of her financial mismanagement.
At the time of the trial, the wife was 51 years old and the husband was 54 years old. The wife testified that she had a high-school diploma and had attended college for several semesters. She testified to having experience working as a secretary, a legal assistant, a substitute teacher, and a rental-property manager. At the time of the trial, she was working sporadically at an automobile auction. The wife testified that she had submitted resumes to employers but that she had been unable to find full-time employment. She testified that she was living with her parents and was receiving food stamps.
The parties provided differing valuations regarding the Dug Out Valley properties and the Sand Mountain properties. Referring to the 2007 statement, the wife testified that the 5.9 acres with the house in Dug Out Valley was valued at $55,000 and that the other property, including the land and the trailers, in Dug Out Valley was valued at $200,000. The husband acknowledged that the wife might have prepared the 2007 statement, but he asserted that he did not assist in creating it. The husband testified that the value of the land with the house in Dug Out Valley was $24,000 to $25,000 and that, based on other land sold in the area, the value of the land with the trailer park in Dug Out Valley was $22,200 to $29,600. Houstan testified that he owned three trailers in the park and that the husband owned three trailers. Houstan testified that the trailers were valued at $1,200 each and that they were having difficulty generating rental income because of the closure of sock mills in the area.
Early in the marriage, the husband leased the 32-acre Sand Mountain property as pastureland. The wife testified that the husband recently had removed topsoil from that property for use in his business. The wife testified that, at the time of the trial, the value of the Sand Mountain properties was $125,000. The husband testified that the value of the Sand Mountain properties was $275,000. It is unclear from the record whether the Sand Mountain properties were assigned separate values.
The wife requested periodic alimony and the Town and Country van she was driving, but she did not request any items the husband had already taken from the marital residence, such as his BBQ grill. The husband requested a gun safe that was installed in the residence. Both parties *1267 testified that they owed the principal amount of $100,000 for the mortgage on the marital residence and that the husband had been making the mortgage payments since September 2012. The husband testified that the mortgage payments were $1,251 a month. The wife testified that the parties did not have any retirement assets.
By the time of the trial, the daughter was of the age of majority. The wife testified to supporting the daughter by helping her with college-scholarship and financial-aid applications. The wife requested that the husband pay a child-support arrearage accrued during the pendency of the divorce action. The husband testified that he did not pay child support, as ordered in the July 10, 2012, judgment, after the first appeal was filed.
On January 8, 2015, the trial court entered a judgment divorcing the parties. The judgment divided the marital property and adjudicated the issue of periodic alimony as follows:
“4. The [wife] is hereby awarded the marital residence and its furnishings, except as set out in paragraph (9) below, and one (1) acre of land and shall assume the indebtedness to Regions Bank and hold [the husband] harmless therefrom. The [wife] shall refinance the said marital residence within sixty (60) days from the date of this Final Decree. The [husband] shall execute whatever documents are necessary to effectuate the same.
“5. The [wife] is awarded the Chrysler Town <⅞ Country van. The [husband] shall execute whatever documents are necessary to effectuate the same.
“6. The [husband] is awarded the BBQ grill, his rings, the dining room suite and all of his personal belongings.
“7. The [husband] is awarded the Dugout Valley properties, the one (1) acre tract and the 32 acre tract. It is the Court’s intent that by this Final Decree the [husband] be awarded all of the parties’ property located on Sand Mountain except the marital residence and one (1) acre that is awarded in paragraph (4) above. The [wife] shall execute whatever documents are necessary to effectuate the same.
“8. The [husband] is awarded all of the assets of Steve Walker Construction and any mobile homes. He shall be responsible for any and all indebtedness for such business and shall hold the [wife] harmless from any such debt.
“9. The [husband] is awarded the gun safe that is in the marital residence. He shall be solely responsible for paying for any repairs necessary to the martial residence based on the gun safe’s removal. The [husband] shall ensure that after the safe is removed, the marital residence is repaired such that there is no evidence of the safe’s removal and that the house is in as good or better shape than it was before the removal. In the alternative, he may leave the safe in the house.
“10. Other than as set out herein, each party is hereby awarded the rights title and possession of the items of personal property in their respective possessions.
“11. Other than as set out herein, each party shall be solely liable for any and all debts incurred in their own name and shall hold the other party harmless from all such indebtedness.
“12. Upon consideration of the parties’ education, standard of living during the marriage, future employment prospects, potential for maintaining their standard of living after the divorce, ages and health, length of marriage, source of common property and conduct with reference to the cause of the divorce, the Court finds that an award of periodic *1268 alimony is not proper. Therefore, neither party is awarded periodic alimony.
“13. Each party shall maintain full right, title and interest in their own retirement account(s). Neither party is awarded any right, title or interest in any retirement account owned by, or in the name of, the other party.”
On February 9, 2015, the wife filed a motion to alter, amend, or vacate the judgment and for the recusal of the trial judge.[2] In the motion, the wife asserted that the January 8, 2015, divorce judgment was substantially the same as the judgment that previously had been reversed by this court and that, therefore, the trial judge should recuse himself for allegedly failing to follow this court’s mandate upon remand. The wife also argued that the evidence did not support the property division in the judgment, that the husband owed unpaid child support, and that she was unable to refinance the mortgage on the marital residence as ordered.
On February 17, 2015, the husband filed a postjudgment motion seeking to sell the marital residence at public auction and seeking reimbursement for the mortgage payments on the marital residence that he had made during the pendency of the divorce action. The wife filed a response, asserting in part that the husband’s post-judgment motion was untimely. The husband then filed an amended postjudgment motion seeking to sell the marital residence, citing Rule 60(b)(2), Ala. R. Civ. P.
On March 3, 2015, the trial court conducted a hearing on the postjudgment motions. During the hearing, the trial court stated the following regarding the wife’s motion seeking the recusal of the trial judge:
“THE COURT: ... It seems to me that the premise of this is that I have entered an order that has been rejected—substantively been rejected by the Court of Civil Appeals. I don’t read their opinion that way, I don’t read their opinion as issuing any kind of decision relative to the merits of the decision.
“It seems to me that their decision is just saying that the provision relative to the couple of tracks of land would not— was simply an agreement to agree and that was not a meeting of the minds. So we’ve talked about this judgment that I’ve entered that is substantially similar to the one the parties have agreed upon, but is it not the case that basically what I did was enter an order that was in compliance with the agreement that they reached, and it’s undisputed about that, but for two tracks of land?

“....

“THE COURT: ... [I]s my reading of the Civil Appeals decision not right in that it seems to me that the premise for the recusal—and again, don’t take this personally. I’m just dissecting the issue, but it seems to me that the premise of that is that I have entered what has been a substantively rejected argument, substantively rejected agreement, and I don’t think that’s true. Civil Appeals didn’t look at this agreement and say it’s not fair, did they? They just said it was not an agreement.”
On March 25, 2015, the trial court entered an order amending the judgment to order the husband to be responsible for $10,000 in unpaid child support. In the *1269 order, the trial court denied the motion to recuse, stating as the rationale for its holding: “ ‘ “[A]dverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice.”’” (Quoting Baldtwin v. Baldwin, 160 So.3d 34, 38 (Ala.Civ.App.2014), quoting in turn Hartman v. Board of Trs. of the Univ. of Alabama, 436 So.2d 837, 841 (Ala,1983).) Regarding the mortgage payments, the trial court held:
“The testimony at trial was that the [husband] lived in the marital residence until December 2011. Since that time, neither party has lived there. The [husband] has made all of the mortgage payments. Those payments are $1,251.00 per month. Since December 2011, there have been 36 monthly mortgage payments made by the [husband], up until January 2015. That amounts to $45,036.00 paid by the [husband]. One-half (1/2) of that amount is $22,518.00.
“The Final Decree is AMENDED as follows: based on the property division made by the Court, it is equitable that the [wife] pay $10,000.00 to the [husband] as reimbursement for his payment of the mortgage. The remaining $12,518.00 of one-half (1/2) of such mortgage payments is credited toward the [wife] as part of the property division.”
(Capitalization in original.) The trial court denied the wife’s request to alter the division of the remaining assets and liabilities, stating:
“The Court finds that the mortgage assigned to the [the wife] is primarily the result of her financial misdeeds and therefore equitably her responsibility post-divorce. The [husband] contributed income during the marriage to help resolve financial problems incurred by the [wife] alone and such is credited to him. Also, her characterization of the rental property awarded to the [husband] is inaccurate. Such property is not nearly as productive as she claims. The Final Decree awarded the marital residence to the [wife].”
Despite awarding the husband reimbursement for his having paid the mortgage on the marital residence during the pendency of the divorce action, apparently on its own initiative, see discussion infra, the trial court construed the husband’s post-judgment motion as having been filed pursuant to Rule 59, Ala. R. Civ. P., and it denied the motion on the ground that it lacked jurisdiction to grant the relief ré-quested because the motion was filed more than 30 days after the entry of the judgment. See Rule 59(e), Ala. R. Civ. P.
On May 5,2015, the wife filed a notice of appeal to this court. The husband did not file a notice of cross-appeal. On appeal, the wife contends that the trial court exceeded its scope on remand from our decision in Walker, supra, that the trial judge should have recused himself, that the property division in the judgment is inequitable, that she should have received periodic alimony, and that the trial court improperly amended the judgment to order the wife to pay the husband $10,000.

Discussion

The wife first argues that the January 8, 2015, divorce judgment is inconsistent with this court’s remand instructions in Walker, supra, because, she asserts, that judgment is substantially similar to the previous judgment that this court reversed in Walker. Our remand in Walker was based on our reversal of the trial court’s judgment because of a lack of an enforceable agreement that could be incorporated into a final judgment. Walker, 144 So.3d at 366. We remanded the cause for a trial on all the issues because the provisions of the parties’ purported agreement were not severable. Following remand, the trial court conducted a trial on all the issues *1270 and then entered a judgment. The wife fails to establish how the trial court failed to follow any instructions of this court on remand. Further, we note that the two judgments are similar only in the division of property and that the judgments differ in the disposition of the Sand Mountain properties.
The wife further asserts that the trial court intended to enter a judgment in compliance with the purported settlement agreement that we held unenforceable in Walker, Our opinion in Walker, however, did not reach the merits of the property division in the purported settlement agreement. The wife imputes an intent on the part of the trial court to enter a judgment containing provisions similar to the property-division provisions in the purported settlement agreement, which were indisputably agreed upon by the parties except in regards to the provision regarding the disposition of the Sand Mountain properties. Such an intent is not necessarily inconsistent with an intent to enter a judgment on the merits. Our instructions on remand did not restrict the trial court from entering a judgment that was both similar to the purported settlement agreement and supported by the evidence elicited at the trial. To the extent that the wife’s argument as to this issue can be construed as attacking the sufficiency of the evidence to support the property-division provisions of the judgment, we discuss that issue in further detail, infra; however, such a contention has no bearing on whether the trial court complied with our remand instructions in Walker.
The wife’s argument for the trial judge’s recusal is likewise based on her allegation that the trial judge intended to enter a second divorce judgment resembling the first judgment that this court reversed in Walker. We do not discern any assertion of bias or prejudice by the trial judge in that allegation. The wife’s argument is merely based on a disagreement with an adverse ruling. “[A]dverse rulings are insufficient to establish bias by the trial judge that would necessitate recu-sal....” Landry v. Landry, 182 So.3d 553, 556 (Ala.Civ.App.2014); see Jadick v. Nationwide Prop. & Cas. Ins. Co., 98 So.3d 5, 10 (Ala.Civ.App.2011) (“[R]ecusal is not a remedy to be sought merely when a judgment is not in one’s favor ...; moreover, a judgment adverse to the movant [for recu-sal] does not imply the existence of the trial judge’s personal prejudice or bias.”). We conclude that the trial court properly denied the wife’s motion to recuse.
The wife argues next that the property division was inequitable and that she should have been awarded periodic alimony.
“ ‘Trial judges enjoy broad discretion in divorce cases, and their decisions are to be overturned on appeal only when they are “unsupported by the evidence or [are] otherwise palpably wrong.” ’ Ex parte Bland, 796 So.2d 340, 344 (Ala. 2000) (quoting Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990)). Also, when, as in this case, a trial court’s judgment is based on ore tenus evidence, the judgment is presumed correct. Kennedy v. Kennedy, 743 So.2d 487 (Ala.Civ.App. 1999). The presumption of correctness under the ore tenus rule ‘is based on the trial court’s unique position to observe the witnesses and to assess their demeanor and credibility.’ Glazner v. Glazner, 807 So.2d 555, 559 (Ala.Civ. App.2001); see also Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).
“Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drum-mond, 785 So.2d 358 (Ala.2000); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993); and Montgomery v. Montgomery, *1271 519 So.2d 525 (Ala.Civ.App.1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App. 1996).
“In dividing property and awarding alimony, a trial court should consider ‘the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties’] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce.’ Russell v. Russell, 777 So.2d 731, 733 (Ala.Civ.App.2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996); and Brewer v. Brewer, 695 So.2d 1 (Ala.Civ. App.1996). ‘A property division that favors one party over another does not necessarily indicate an abuse of discretion.’ Fell v. Fell, 869 So.2d 486, 496 (Ala.Civ.App.2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala.Civ.App. 1988)).”
Turnbo v. Turnbo, 938 So.2d 425, 429-30 (Ala.Civ.App.2006).
“This court and our supreme court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, Edwards v. Edwards, 26 So.3d 1254, 1259 (Ala.Civ.App.2009), which include: the length of the marriage, Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App. 2009); the standard of living to which the parties became accustomed during the marriage, Washington v. Washington, 24 So.3d 1126, 1135-36 (Ala.Civ. App.2009); the relative fault of the parties for the breakdown of the marriage, Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); the age and health of the parties, Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000); and the future employment prospects of the parties, Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). In weighing those factors, a trial court essentially determines whether the petitioning spouse has demonstrated a need for continuing monetary’ support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet. See Gates v. Gates, 830 So.2d 746, 749-50 (Ala.Civ. App.2002); Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994) (‘The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the wife are shown to merit an award and the husband has the ability to pay.’).”
Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010).
The wife asserts that, under the divorce judgment, the husband receives virtually all the marital assets and the wife is obligated to pay all the debt on the marital residence despite, she alleges, a vast disparity in income. The husband’s tax returns show $5,802 in adjusted gross income in 2012. According to the husband’s testimony, the assets of his construction business total approximately $83,000, but his business debts total $106,000.[3] The husband testified that the Dug Out Valley properties and his trailers have a total value of $49,800 to $58,200. The parties agree that the mortgage debt *1272 on the marital residence is $100,000. However, the parties appear to have testified regarding the value of the Sand Mountain properties as a whole and not regarding the values of each property separately. Thus, the equity value of the marital residence and the value of the Sand Mountain properties the husband received under the divorce judgment is not clear. Evidence from both parties supports the trial court’s finding that the husband has paid for the portion of the mortgage on the marital residence attributable to him and that the remainder of the debt is due to the financial misdeeds of the wife. The parties were married for 17 years before then-separation. Neither party presented evidence indicating that their ages or health should be a factor in the property division. We conclude that the wife has failed to show that the property division was inequitable or that an award of periodic alimony to her was required.
Furthermore, a preponderance of the evidence shows that the wife’s financial misconduct was the cause of the breakdown in the marriage. According to the husband’s testimony, the wife was at fault for the separation because of her financial mismanagement, and the wife admitted to deceiving the husband over financial matters. Although the husband had an affair eight or nine years before the parties separated, testimony shows that the parties reconciled afterward and that the parties’ last fight concerned the wife’s conduct with their checking account. On appeal, the wife fails to argue that she had established the financial costs associated with the parties’ standard of living during the marriage, see Shewbart, 64 So.3d at 1088 (“As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life.”), or the ability of the husband to pay periodic alimony. See id. (“[T]he trial court should consider the ability of the responding spouse to meet [the financial need of the spouse petitioning for periodic alimony].”). We therefore conclude that the wife further fails to establish that an award of periodic alimony to her was required. See Turnbo, 938 So.2d at 430 (“[A] trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case.”).
The wife also contends that the trial court improperly amended the divorce judgment to grant the husband $10,000 as a partial reimbursement for the mortgage payments that he had been making since September 2012. She argues that only her postjudgment motion was timely filed and that the husband’s postjudgment motion was untimely filed 40 days after the entry of the divorce judgment; in support of her argument, she cites Rule 59(e), Ala. R. Civ. P., which provides: “A motion to alter, amend, or vacate the judgment shall be filed not later than thirty (30) days after entry of the judgment.” The trial court, however, denied the husband’s untimely postjudgment motion for lack of jurisdiction pursuant to Rule 59(e).[4] While the *1273 wife’s postjudgment motion was still pending, the trial court apparently amended, on its own initiative, the divorce judgment to grant the husband $10,000 as reimbursement for money he had paid on the mortgage for the marital residence during the pendency of the divorce action.
“Although a trial court generally loses jurisdiction to amend its judgment 30 days after the entry of judgment (see Ex parte Oioen, 420 So.2d 80, 81 (Ala.1982)), a trial court retains the power to correct sua sponte any error in its judgment that comes to its attention during the pendency of a party’s Rule 59(e) motion to alter, amend, or vacate the judgment, regardless of whether the error was alleged or not alleged in the motion. See, e.g., Varley v. Tampax, Inc., 855 F.2d 696, 699 (10th Cir.1988); Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986); Arnold v. Sullivan, 131 F.R.D. 129, 133 (N.D.Ind.1990).”
Henderson v. Koveleski, 717 So.2d 803, 806 (Ala.Civ.App.1998). See Parker v. Parker, 10 So.3d 567, 569 (Ala.Civ.App.2008) (noting that the trial court retained jurisdiction to correct an error in its judgment while a party’s postjudgment motion was pending); Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986) (“A judge may enlarge the issues to be considered in acting on a timely motion under Rule 59[, Fed.R.Civ. P.].”); and Varley v. Tampax, Inc., 855 F.2d 696, 699 (10th Cir.1988) (“The salient fact is that a motion to amend judgment was timely filed. Such gave the [trial court] the power and jurisdiction to amend the judgment for any reason, if it chose to do so, and it was not limited to the ground set forth in the motion itself.”).[5] See also Ex parte DiGeronimo, 195 So.3d 963, 964 (Ala.Civ.App.2015).
A trial court’s jurisdiction to amend its judgment while a party’s post-judgment motion is pending does not extend to granting new relief that was requested after the judgment had already been entered, Burgess v. Burgess, 99 So.3d 1237 (Ala.Civ.App.2012). In Burgess, we stated:
“In [Henderson ], the trial court amended its order to correct the judgment. That amendment afforded one of the parties relief she had originally requested. In this case, however, in its October 24, 2011, order, the trial court afforded the wife new relief. Before it entered its July 29, 2011, divorce judgment incorporating the agreement of the parties, the trial court received testimony from the husband and the wife that each understood the terms of the proposed settlement agreement and that that agreement resolved all the pending issues and claims between the parties. In her August 30, 2011, motion, the wife specifically stated that she was seeking reimbursement for amounts the husband apparently should have paid before the entry of the divorce judgment. Thus, in that motion, the wife sought to recover amounts that could have been, but were not, addressed in the settlement agreement and divorce judgment. In other words, the reimbursement amount for debts or expenses the wife attempted to recover in her August 30, 2011, motion *1274 was not sought as a result of an error in the divorce judgment. Rather, the wife’s claim for relief was caused by an apparent failure to recognize before the entry of the divorce judgment that there existed outstanding debts or expenses on the property at issue that could have been addressed in that original divorce judgment. Accordingly, we cannot say that the fact that the husband’s post-judgment motion was pending allowed the trial court to amend the divorce judgment so as to award the wife monetary relief based upon new claims.”
Id. at 1240-41.
In his counterclaim for a divorce, the husband sought an equitable division of the marital property, an equitable division of the marital debts, and additional relief as may be just and proper. At trial, he raised the issue of the unreimbursed mortgage payments. Unlike in Burgess, the divorce judgment in this case does not incorporate an agreement of the parties that resolved all pending claims between the parties. Therefore, the trial court did not grant relief upon a new claim when it amended of the divorce judgment. The divorce judgment lacked any mention of the mortgage payments despite testimony from both parties that the husband had been making the mortgage payments. As a result, the trial court was allowed to correct that omission in the divorce judgment in conjunction with its ruling on the wife’s timely postjudgment motion; therefore, the wife’s argument regarding the timeliness of the husband’s postjudgment motion fails to present a ground for reversal of the divorce judgment.
For the foregoing reasons, we affirm the divorce judgment entered by the trial court.
ON REHEARING EX MERO MOTU: OPINION OF MAY 6, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. In Walker, the 1-acre parcel that is part of the Sand Mountain properties was described as a "1.5 acre tract.” 144 So.3d at 361.

. The divorce judgment was entered on January 8, 2015. Rule 59(e), Ala. R. Civ. P., requires that a postjudgment motion be filed within 30 days of the entry of the judgment. The 30th day following the entry of the judgment was Saturday, February 7, 2015; therefore, the wife's motion, filed on Monday, February 9, 2015, was timely. See Rule 6(a), Ala. R. Civ. P.

. We note that neither party asserts that the assets of the construction business were not subject to division as marital property.

. The husband also filed an amended post-judgment motion to sell the marital residence under Rule 60(b)(2), Ala. R. Civ. P„ alleging newly discovered evidence of the wife’s inability to refinance the mortgage. However, “ ‘[t]here can be no Rule 60(b)(2) relief for evidence which has come into existence after the trial is over simply because such a procedure would allow all trials perpetual life.' ” Wal-Mart Stores, Inc. v. Pitts, 900 So.2d 1240, 1245 (Ala.Civ.App.2004) (quoting Moody v. State ex rel. Payne, 344 So.2d 160, 163 (Ala. 1977)). Because evidence of the wife’s inability to refinance the mortgage arose after the *1273 entry of the judgment, we do not consider the husband’s motion as seeking relief that is cognizable under Rule 60(b)(2).

. " ‘[S]ince the Alabama Rules of Civil Procedure are modeled on the Federal Rules of Civil Procedure, federal decisions are highly persuasive when we are called upon to construe the Alabama rules.’” Henderson, 111 So.2d at 806 n. 4 (quoting City of Birmingham v. City of Fairfield, 396 So,2d 692, 696 (Ala. 1981)), We note that Rule 59, Ala. R. Civ, P„ is substantially similar to its federal counterpart.