MOORE, Judge.
Cedric McMillian ("the husband") appeals from a judgment entered by the Bessemer Division of the Jefferson Circuit Court ("the trial court"), divorcing him from Beverly Cole McMillian ("the wife"). We affirm the trial court's judgment.
Procedural History
On October 20, 2014, the wife filed a complaint seeking a divorce from the husband. After a hearing and based upon the parties' agreement, the husband was ordered to pay pendente lite child support in the amount of $1,700 per month. On November 20, 2014, the husband answered *710 the complaint. After a subsequent hearing, the husband was ordered to pay pendente lite alimony in the amount of $7,000 a month.
On July 7, 2015, the husband filed a motion to dismiss, asserting that the parties had reconciled. The wife filed an objection to the motion to dismiss, denying that the parties had reconciled. The husband's motion to dismiss was denied on March 2, 2016.
After a trial, the trial court entered a judgment on June 19, 2017, that, among other things, divorced the parties; divided the parties' property; and ordered the husband to pay child support in the amount of $1,000 per month, to pay periodic alimony in the amount of $4,000 per month, and to pay the wife a total of $100,000 in alimony in gross. The trial court entered an order on June 23, 2017, appointing a special master to oversee the division of property set forth in the divorce judgment. On June 22, 2017, the husband filed his notice of appeal.[1]
Facts
The parties were married in 2006; two children were born of the marriage. The wife testified that, during the marriage, the husband had committed adultery multiple times and had been physically abusive.
The husband testified that, from 2006 until 2008, he had worked as a business manager for an automobile dealership earning between $90,000 and $100,000 annually and that he had paid most of the parties' monthly expenses. He testified that the automobile industry "pretty much collapsed" in 2008 and that the parties had struggled financially for a period. The wife testified that, in 2010, the parties purchased Majestic Memorials and Florals ("Majestic"), a headstone and floral business, and that she had worked at that business for one year before she left to manage Forest Grove Florist, a business owned by family friends. The husband admitted that the wife had worked for Majestic in the floral department but testified that she had worked there for only four months.
In January or February 2014, the parties purchased George Washington Carver Memorial Gardens, Inc. ("GWC"), a company that operated a cemetery and that, at that time, was involved in a bankruptcy proceeding. The wife testified that the parties had purchased GWC for $19,000; the husband, however, testified that they had purchased it for $18,000. The wife testified that the parties had paid $1,000 in earnest money and that, in order to fund the remaining amount owed on the purchase price of GWC, the parties had used $3,000 from the wife's income-tax-refund proceeds and $5,000 from the Majestic business checking account; she testified that the parties had sold two trucks, which, she said, "were included in the purchase of [GWC]," to pay the remainder of the purchase price, i.e., $10,000. The husband admitted that the wife had helped fund the purchase of GWC. The wife testified that she had worked for GWC managing the employees and the cemetery grounds and handling scheduling and payroll. She testified that she had worked for GWC for nine months, earning $8,000 per month, until the husband had terminated her employment during the pendency of the divorce proceedings. According to the wife, GWC had been very chaotic coming out of the bankruptcy proceedings so, she said, she had put all of her time into getting the *711 business back in order. The husband admitted that the wife had handled the accounting for GWC, but, he said, she had done so for only three months.
The wife testified that the income from Majestic and GWC had been used to support the parties' household. The wife testified that, before the complaint for divorce was filed, the parties had lived in nice homes and had traveled. She testified that she had been able to get her hair and nails done and to have a housekeeper. She testified, however, that, after the divorce action was commenced, she had had to cut back on expenses.
The wife testified that she earns between $1,500 and $2,000 per month from Forest Grove Florist. She testified that the lease for the building that housed Forest Grove Florist had expired and that, as the manager of that business, she did not intend on renewing it because the business was not making enough money. She testified that, at the time of the trial, she was in the process of earning a bachelor of science degree in business administration and that she would complete her degree in one and a half semesters. The wife testified that the husband had not been consistent in paying his pendente lite support obligations and that he owed arrearages in the amount of $49,501.
The husband testified that, at the time of the trial, he was earning approximately $17,500 per month. He testified that he is renting a house for $2,600 per month and that the residence has two kitchens, seven bedrooms, a swimming pool, and a weight room. He testified that he visits Pearl River Resort, a casino, five times per month and that he had wagered over $250,000 there during the course of the divorce proceedings.
Douglas K. Uhler, an accountant and business-value analyst who testified on behalf of the wife, testified that, two weeks after the divorce complaint was filed in October 2014, the husband had formed McMillian Cemeteries, LLC. Uhler testified that, subsequently, on February 5, 2015, McMillian Cemeteries had purchased Zion Memorial Gardens Cemetery ("Zion Memorial") and New Grace Hill Cemetery for $130,000. He testified that, on November 12, 2015, McMillian Cemeteries had purchased the stock of Lincoln Memorial Cemetery for $50,000 and that, on February 16, 2017, McMillian Cemeteries had purchased Sunrise Memorial Gardens for $150,000. The husband testified that McMillian Cemeteries had subsequently sold New Grace Hill Cemetery to his mother, and it was undisputed that the wife had not objected to that sale.
According to Uhler's report, which was submitted as an exhibit at trial, considering the income approach to valuation, which he testified was the most solid approach to valuation for this case, he determined that the total capitalized value of GWC, Zion Memorial, New Grace Hill Cemetery, Lincoln Memorial, and Sunrise Memorial Gardens is $2,227,282. He broke the valuations down by business as follows: GWC-$582,586; Zion Memorial-$899,125; New Grace Hill Cemetery-$248,523; Lincoln Memorial-$331,365; and Sunrise Memorial Gardens-$165,682.[2] Uhler also testified that, because he did not have enough information to determine Majestic's value using the income approach, he had, instead, determined Majestic's net equity to be $53,173.
David Hughett, an accountant hired by the husband, testified that he had valued the assets as follows: Zion Memorial-$224,438; Lincoln Memorial-negative $24,025; GWC-$205,776; and Majestic-$74,194.
*712 Hughett did not testify as to a valuation of Sunrise Memorial Gardens because his valuation had been conducted before McMillian Cemeteries purchased that cemetery. Uhler criticized Hughett's valuation as not complying with the American Institute of Certified Public Accountants' Statement on Standards for Valuation Services.
Discussion
On appeal, the husband argues that the trial court erred by determining that the parties had not reconciled during the pendency of the divorce action. He also argues that the trial court erred by awarding the wife periodic alimony, specifically because, he says, the evidence indicated that the wife was cohabiting with her boyfriend. In the present case, however, the trial court's judgment did not make specific findings of fact on the issues of reconciliation and cohabitation, and the husband did not file a postjudgment motion challenging the sufficiency of the evidence. "[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review." New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala. 2004). Accordingly, we conclude that the husband's arguments regarding the sufficiency of the evidence on the issues of reconciliation and cohabitation are not preserved for appellate review.
The husband also argues that the trial court erred in dividing the parties' property and, based on arguments other than the wife's alleged cohabitation with her boyfriend, in awarding periodic alimony to the wife. The trial court's judgment included specific findings of fact on those issues; thus, those issues are preserved for this court's review. New Props., 905 So.2d at 801-02.
" 'Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala. 2000) ; Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993) ; and Montgomery v. Montgomery, 519 So.2d 525 (Ala. Civ. App. 1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ. App. 1996).
" 'In dividing property and awarding alimony, a trial court should consider "the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties'] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce." Russell v. Russell, 777 So.2d 731, 733 (Ala. Civ. App. 2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996) ; and Brewer v. Brewer, 695 So.2d 1 (Ala. Civ. App. 1996). "A property division that favors one party over another does not necessarily indicate an abuse of discretion." Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala. Civ. App. 1988) ).'
" Turnbo v. Turnbo, 938 So.2d 425, 429-30 (Ala. Civ. App. 2006)."
Walker v. Walker, 216 So.3d 1262, 1270-71 (Ala. Civ. App. 2016).
*713 With regard to the division of property, the husband specifically argues that the trial court erred in determining that the parties' businesses, and the assets of the businesses, were marital property subject to division. Specifically, with regard to the cemeteries that were purchased by McMillian Cemeteries after the divorce action was commenced, the husband argues that the trial court should have considered those cemeteries to be his separate property because those cemeteries were acquired by him during the parties' separation.
"A party's ' "separate estate" is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.' Gartman v. Gartman, 376 So.2d 711, 713 (Ala. Civ. App. 1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala. Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during their marriage. See § 30-2-51(a), Ala. Code 1975."
Nichols v. Nichols, 824 So.2d 797, 802 (Ala. Civ. App. 2001).
The husband cites no authority holding that property accumulated during the pendency of a divorce proceeding but before the entry of a judgment divorcing the parties must be considered the separate property of the purchasing spouse. Indeed, many courts of other jurisdictions have specifically held to the contrary. See, e.g., Lynnes v. Lynnes, 747 N.W.2d 93, 99 (N.D. 2008) ("Assets accumulated after separation but prior to the divorce are included in the marital estate."); Byington v. Byington, 224 Mich. App. 103, 113-14, 568 N.W.2d 141, 145-46 (1997) (holding that property acquired during parties' separation is not excluded as marital property but that "the court may properly consider manifestations of intent to lead separate lives when apportioning the marital estate"); and O'Neal v. O'Neal, 55 Ark. App. 57, 58-59, 929 S.W.2d 725, 726 (1996) (holding that "assets acquired after separation and prior to divorce are marital property" but that an advance on compensation paid during the marriage but earned after the divorce was not marital property). But see O'Connell v. O'Connell, 889 N.E.2d 1, 11 (Ind. Ct. App. 2008) ("Generally, property acquired after the final separation is excluded from the marital estate.").
Based on Alabama law concerning the distinction between marital property and separate property, as well as the holdings from other jurisdictions, we conclude that property acquired during the parties' separation is not automatically excluded from the marital estate. Instead, such property may be considered by the trial court and apportioned according to the trial court's discretion considering the particular facts and circumstances of the case. Walker, 216 So.3d at 1270-71.
In the present case, the trial court heard evidence indicating that the parties had purchased two businesses before the complaint for a divorce was filed: Majestic and GWC. The wife testified that she had worked for Majestic and that she had contributed financially to and had worked for GWC. She further testified that the income derived from both of those businesses had been used to support the parties' household. Indeed, the wife earned *714 $8,000 per month when she was for working for GWC. After the complaint for a divorce was filed, the husband terminated the wife's employment with GWC, leaving her with only her income from Forest Grove Florist, which she testified was between $1,500 and $2,000 per month. Moreover, during the pendency of the divorce action, while having sole access to the income from Majestic and GWC, the husband failed to fully meet his alimony and child-support obligations, accumulating arrearages totaling almost $50,000. Meanwhile, the husband used the income from the businesses to rent a large home, to take regular gambling trips, and to form a company that purchased several cemeteries that he sought to shelter from division in the divorce action. We conclude that, given the facts of this case, the trial court could have determined that allowing the husband to convert income derived from the businesses purchased and established by the parties to fund the purchase of other businesses and assets while he ignored his support obligations would be inequitable.
Also, with regard to GWC, the cemetery business purchased during the parties' marriage, the husband argues that the wife made minimal contributions to that business. We note, however, that, with regard to GWC, the evidence indicated that the wife had contributed to the initial purchase of that business. Furthermore, the wife testified that she had worked for GWC for nine months earning $8,000 per month until the husband had terminated her employment during the pendency of the divorce action. Although the husband attempted to minimize the wife's contributions to GWC, the wife testified that she had spent all of her time working to bring GWC, which she described as a chaotic business that had been purchased out of a bankruptcy proceeding, back into order.
" ' " '[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). ' "The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment." ' Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985) )."
" ' Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005).' "
Sullivan v. Sullivan, 211 So.3d 836, 839 (Ala. Civ. App. 2016) (quoting Weeks v. Weeks, 27 So.3d 526, 529 (Ala. Civ. App. 2008) ). Because the trial court could have properly believed the wife's testimony indicating that she had contributed to the purchase of and running of GWC, we do not agree with the husband's argument on this point.
With regard to the award of periodic alimony, the husband specifically argues that the award of alimony was not necessary for the wife to achieve the standard of living the parties enjoyed during the marriage. He argues that, during most of the marriage, the parties had maintained a modest standard of living. The evidence indicated, however, that for nine months in 2014, the wife had earned $8,000 per month from GWC. The wife testified that the parties had lived in nice homes and had traveled and that she had been able to have a housekeeper and to have her hair and nails done. She testified that, after the divorce complaint was filed, she had had to cut back on her expenses. The evidence indicated that the husband, on the other hand, had continued to enjoy a *715 high standard of living, living in a large home, traveling frequently, and gambling large amounts of money.
Even considering that the wife was awarded an income-producing asset, Zion Memorial, we note that the husband testified that the wife had worked only in the accounting and floral parts of the businesses. On the other hand, he testified that there is no aspect of running a cemetery that he does not understand and that he does not even have to hire grave diggers for the cemeteries. Therefore, the trial court could have concluded that the wife would not be able to run Zion Cemetery as efficiently by herself to earn as high of a net income as the parties would have been able to earn using their joint efforts and, thus, that she would need periodic alimony to supplement her income. The trial court could have also considered the wife's testimony indicating that the husband had committed adultery multiple times during the marriage and had physically abused her, which testimony the trial court specifically found credible in its judgment.
Considering the facts and circumstances of this case as discussed above, see Walker, 216 So.3d at 1270-71, we cannot conclude that the trial court exceeded its discretion in dividing the parties' property and in awarding periodic alimony to the wife. Therefore, the trial court's judgment is affirmed.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

The parties thereafter notified this court that the wife had filed a postjudgment motion on July 14, 2017. The husband's notice of appeal was held in abeyance pending the disposition of that motion. See Rule 4(a)(5), Ala. R. App. P.

We note that these amounts actually total $2,227,281.