MOORE, Judge.
Ida Le Blanc Swift ("the wife") appeals from a judgment entered by the Baldwin Circuit Court ("the trial court") divorcing her from David Dauphin Swift, Sr. ("the husband"), to the extent that the judgment divided the parties' property. We affirm in part and reverse in part.
Procedural History
On February 24, 2014, the wife filed a complaint seeking a divorce from the husband. The husband answered the complaint on February 28, 2014.
After a trial, the trial court entered a judgment on November 18, 2016, divorcing the parties; ordering the husband to pay the wife $5,000 per month in periodic alimony; awarding the husband the parties' boat, all his business interests, the vehicles in his possession, the parties' house located in Lillian ("the Lillian house"), and the contents of the Lillian house, with the exception of any items inherited from the wife's family; and awarding the wife the parties' condominium located in Fairhope ("the Fairhope condo"), the contents of the Fairhope condo, with the exception of any items inherited from the husband's family, certain real property owned by the parties located in Conecuh County ("the Conecuh County property"), and the vehicles in her possession. The parties were ordered to divide their United Bank shares, with the husband receiving 90% of the total shares and the wife receiving the remaining 10%, and "[a]ll retirement accounts, investment accounts, annuities, IRAs, and other accounts," with the wife receiving 35% of the funds in those accounts and the husband receiving the remaining 65%. The husband was ordered to "maintain in full force and effect a policy of insurance on his life, with [the wife named] as beneficiary in a benefit amount of no less than $350,000." Finally, the divorce judgment provided:
"12. Any personal property not otherwise disposed of by this Order shall be equally divided between the parties. If the parties cannot mutually agree upon such division, the parties shall compile a list of all such unresolved items. The husband shall have first choice of one item, the wife the next choice of one item, with this process continuing until all items are selected."
On December 16, 2016, the wife filed a motion titled "Motion to Alter Amend or Vacate Pursuant to Rule 59[, Ala. R. Civ. P.]." On February 14, 2017, the trial court *311 entered an order granting the wife's motion in part and stating, in pertinent part:
"Specifically, with regard to the personal property of the parties, each party is to receive any and all items that were given to them or inherited from his or her own family members and the joint personal property that was acquired during the marriage as wedding presents or specific items of sentimental value are to be divided equally. If the parties cannot mutually agree upon such division, the parties shall compile a list of all such unresolved items. The husband shall have first choice of one item, the wife the next choice of one item, with this process continuing until all items are selected."
On March 21, 2017, the wife filed her notice of appeal to this court. That appeal was docketed as appeal no. 2160470. This court subsequently dismissed that appeal as being from a nonfinal judgment. See Swift v. Swift (No. 2160470, Aug. 1, 2017), 266 So. 3d 18 (Ala. Civ. App. 2017) (table).
On August 2, 2017, the wife filed a motion for clarification and a separate motion requesting the trial court to award her the property set forth on a list attached to the motion or to set the matter for a hearing. The husband filed responses to both motions.
On August 21, 2017, this court issued the certificate of judgment in Swift. On September 28, 2017, the trial court entered an order stating, in pertinent part, that "[t]he Husband shall receive any and all property located in the Lillian House and any property that is currently in his possession" and "[t]he Wife shall receive any and all property located in the Fairhope condo and any property that is currently in her possession." On October 4, 2017, the wife filed her notice of appeal.
Facts
The husband testified that the parties had married on December 6, 1975, and that they had had two children together, both of whom were adults at the time of the trial.
According to the husband, his annual income from all sources in 2014 was $358,570. He testified that the parties' income had been derived primarily from his employment with Swift Supply, Inc., a corporation that sells lumber and building materials. At the time of the trial, the husband owned 10% of the shares of Swift Supply and was the chairman of the board of that company. He testified that his base salary is $142,000. The husband also owns a one-third interest in Palustris Products, LLP, which owns a one-half interest in various timberlands and tracts of real property, as well as a one-half interest in Swift Lumber, Inc. The husband's two brothers own the remaining two-thirds interest in Palustris. The husband testified that Palustris is a longtime Swift family asset. The husband also testified that he owns a one-third interest in Swift Brothers, LLC, which owns certain timberland, as well as a one-half interest in a house in Baldwin County, and that his two brothers own the remaining two-thirds interest in Swift Brothers. The husband testified that his interest in Swift Brothers had been inherited.
The husband testified that he had been the chairman of the board of United Bank ("the bank") for approximately 15 years and had been on the board for several years before he began serving as the chairman. He receives fees of $28,000 per year as a result of his position as chairman of the board of United Bank. He testified that he owns 31,772 shares in the bank, that the wife owns 8,217 shares, and that Swift Brothers owns shares as well. He testified that the shares were valued at *312 $8.01 per share at the time of the trial. According to an exhibit introduced by the husband, he had inherited all but 4,079 of his total bank shares; therefore, using the value of $8.01 per share, the value of the husband's inherited shares is $221,820.93 of the parties' $320,311.89 total share value. The wife testified that the parties had used the dividends from the bank shares for their expenses and that the dividends had been reported on their joint income-tax returns.
The husband's financial statement, dated December 31, 2014, indicated that his business interests in Swift Supply, Palustris, and Swift Brothers have a total value of $4,916,000. The husband initially testified that, to his knowledge, his financial statement was correct; however, he later testified that there had been an error in the valuation of the businesses. He did not proffer an alternative value, but he did testify that his shares in Swift Supply were indebted more than they were worth and that they have very little value because they are not marketable. He also testified that the total debt for Palustris and Swift Lumber, of which Palustris owned 50%, was $15,000,000. Bryan Parker, a certified public accountant who testified as the wife's expert witness, valued the husband's interest in the businesses at $4,423,000.
It is undisputed that the wife had never worked for Swift Supply. However, the wife testified that she had helped host social functions for the company, had traveled on business for the company, and had volunteered in the community to assist in raising the company's profile. She worked outside the home less than three years total during the parties' marriage. The wife testified that she had attempted to obtain a license to sell real estate during the pendency of the divorce action but that she had been unable to retain the information required to pass the test.
The wife testified that, during the marriage, the parties had traveled extensively and that she had had a weekly housekeeper and had used a lawn service. The wife testified that, at the time of the trial, her monthly expenses were $8,837.89. She included in those expenses $500 for investments and $500 for contributions to a Roth IRA. She testified that she will receive $1,300 per month in Social Security benefits once the husband attains the age of 66 years.
The husband valued the parties' "retirement accounts, investment accounts, annuities, IRAs, and other accounts" at $1,186,197. The husband's December 31, 2014, financial statement valued those accounts at $917,500. According to the husband, the lawn equipment and boats that were awarded to the husband in the divorce judgment, as amended, were valued at $17,885 and the Lillian house was valued at $687,000. The husband valued the Fairhope condo at $330,000, the Conecuh County property at $72,600, and the wife's Lexus automobile at $27,000.
The husband testified that he planned to retire when he turned 66 in May 2017. The husband testified that he did not want a divorce. The wife testified that the husband had had no interest in her during the last 10 years of the marriage. She testified that she had tried to save their marriage by going to counseling. According to the wife, the husband had attended counseling with her for a period but then had stopped. She testified that she felt that the husband had betrayed her trust by telling her that there was no budget for the Lillian house, which, according to the wife, had caused them to accumulate debt. She also testified that the husband had loaned Swift Supply money without her knowledge and against her wishes. The husband testified that he *313 had had to loan Swift Supply money to keep the business afloat. He also testified that he had believed that the parties would sell their previous house for a higher price than they had eventually sold it. According to the husband, that had resulted in the parties being unable to put as much money into the Lillian house as he had intended. The husband testified, however, that he had paid off the mortgage on the Lillian house using funds he inherited from his father, who died in February 2013, as well as with funds from income-tax refunds. The husband testified that the wife had filed for a divorce immediately after his father's estate had been settled.
Standard of Review
" ' "[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). " 'The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.' " Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985) ).'
" Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005)."
Weeks v. Weeks, 27 So.3d 526, 529 (Ala. Civ. App. 2008).
Discussion
On appeal, the wife argues that the trial court erred by awarding the husband a portion of certain funds she inherited from her father, specifically, $100,000 that was contained in the Ida Le Blanc Swift Trust; the wife points out that her $100,000 inheritance is included in the accounts of which the husband was awarded 65%.
Section 30-2-51(a), Ala. Code 1975, provides:
"If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
At the trial, the wife testified that she had inherited $100,000 from her father and that she had placed those funds in the Ida Le Blanc Swift Trust. The husband testified that the wife is the sole trustee and beneficiary of that trust and that he is not privy to what is contained in the trust. Because the undisputed evidence indicates that the wife had inherited $100,000 from her father and that that money had been held in trust solely for the benefit of the wife and, therefore, had not been used for the common benefit of the parties during their marriage, we conclude that the trial court erred in awarding the husband a portion of those funds.
The wife also argues that the trial court erred in its division of the parties' property.
" 'Matters such as alimony and property division are within the sound discretion of the trial court. Ex parte Drummond, 785 So.2d 358 (Ala. 2000) ;
*314 Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993) ; and Montgomery v. Montgomery, 519 So.2d 525 (Ala. Civ. App. 1987). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ. App. 1996).
" 'In dividing property and awarding alimony, a trial court should consider "the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; [the parties'] station[s] in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the cause of the divorce." Russell v. Russell, 777 So.2d 731, 733 (Ala. Civ. App. 2000). Also, a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala. Civ. App. 1996) ; and Brewer v. Brewer, 695 So.2d 1 (Ala. Civ. App. 1996). "A property division that favors one party over another does not necessarily indicate an abuse of discretion." Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003) (citing Dobbs v. Dobbs, 534 So.2d 621 (Ala. Civ. App. 1988) ).'
" Turnbo v. Turnbo, 938 So.2d 425, 429-30 (Ala. Civ. App. 2006)."
Walker v. Walker, 216 So.3d 1262, 1270-71 (Ala. Civ. App. 2016).
The wife specifically argues that the parties' interests in the businesses and the bank shares were marital property and should have been equitably divided. With regard to the bank shares, the husband presented evidence indicating that the majority of those shares had been inherited by him. Although the wife testified that income from those shares had been used to pay the parties' expenses, our supreme court has held that "[n]othing in [ § 30-2-51(a) ] states that if one party's inheritance or gifts are used for the parties' common benefit then the trial judge must consider the inheritance or gifts when making the property division." Ex parte Drummond, 785 So.2d 358, 362 (Ala. 2000). The decision whether to consider that property when making the property division is left to the discretion of the trial court. Id. In this case, the trial court appeared to have considered all the parties' bank shares as marital property because it divided the entire number of bank shares between the parties, awarding the husband 90% of the shares and awarding the wife the remaining 10%. However, the trial court was also within its discretion, in determining how to equitably divide the bank shares, to consider that the source of the majority of the bank shares was from an inheritance received by the husband; therefore, we cannot conclude that the award of 90% of the total bank shares to the husband was inequitable. Walker, 216 So.3d at 1270-71.
With regard to the award of the interests in the businesses, the evidence indicated that Palustris is a longtime Swift family asset and that the husband's interest in Swift Brothers had been inherited. With regard to the husband's interest in Swift Supply, the evidence was undisputed that the parties' primary source of income throughout the marriage had been from Swift Supply. The husband worked for Swift Supply, and the wife admitted that she had never worked for Swift Supply. Considering that the parties' income from Swift Supply had been attained solely through the husband's efforts and that the other businesses in which the husband had an interest had been passed down through the husband's family, the trial court could have concluded that it was equitable for *315 the husband to retain his interest in those businesses.
The wife also argues that the trial court's overall division of the parties' property was inequitable and that the trial court should have awarded her alimony in gross to compensate her for her property interest in the marriage.
" 'The purpose of the division of marital property is to give "each spouse the value of [his or her] interest in the marriage. Each spouse has a right, even a property right in this." ' " Weeks, 27 So.3d at 529 (quoting Lo Porto v. Lo Porto, 717 So.2d 418, 421 (Ala. Civ. App. 1998), quoting in turn Pattillo v. Pattillo, 414 So.2d 915, 917 (Ala. 1982) ). The wife argues in her brief to this court that, considering all the parties' assets, including the husband's interests in the businesses, she received only 12% of the value of the parties' total assets. We note, however, that the husband's valuations at trial differ from the values that the wife advances on appeal. For instance, at trial, the wife valued the Fairhope condo at $319,000 and the husband valued it at $330,000. In addition, the wife assigned a value of $15,487.41 to the contents in the Fairhope condo, while the husband assigned a value of $57,000 to those contents. See, e.g., Weeks, 27 So.3d at 529 (discussing the ore tenus rule). We note that the parties did not present identical values of their "retirement accounts, investment accounts, annuities, IRAs, and other accounts";[1] however, because those accounts were divided on a percentage basis, the difference in the values assigned would not result in a large change in the overall percentage of property awarded to the wife.
Even considering the minor difference in valuations, we agree that the division of property is far from equal. We note, however, that " 'a trial court is not required to make an equal division of the marital property, but it must make an equitable division based upon the particular facts and circumstances of the case.' " Walker, 216 So.3d at 1271 (quoting Turnbo v. Turnbo, 938 So.2d 425, 430 (Ala. Civ. App. 2006) ). " ' "A property division that favors one party over another does not necessarily indicate an abuse of discretion." Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003).' " Id.
The wife cites Adams v Adams, 778 So.2d 825 (Ala. Civ. App. 2000), a case in which this court determined that the property division was inequitable although the trial court had been concerned that the wife would squander the parties' assets. In Adams, the wife was awarded the parties' "marital home and an adjoining lot, together valued at between $50,000 and $56,000," "all the furnishings of the home, valued at $2,000," and "two vehicles valued at $3,000 each." 778 So.2d at 826. "[T]he husband was awarded two vehicles valued at $3,500 and $3,000" and "stocks worth $17,800 and the investment account totaling $367,542. The husband was ordered to pay the wife periodic alimony of $600 per month for three years and then $750 per month thereafter." Id. He was also "ordered to pay the $3,000 mortgage indebtedness on the marital home, at a monthly payment of $155." Id. This court noted that the wife had no retirement or investment account of her own and concluded that the division of property resulting in only 16% of the marital property being awarded to the wife was inequitable. 778 So.2d at 827.
Unlike in Adams, where the wife was not awarded any retirement or investment accounts, in the present case the wife was *316 awarded 35% of the parties "retirement accounts, investment accounts, annuities, IRAs, and other accounts" as well as 10% of the bank shares. She was also awarded the Fairhope condo and its contents, the Conecuh County property, a Lexus automobile, and $5,000 per month in periodic alimony. Considering the evidence indicating that almost all the marital estate had been derived from either the husband's employment or the husband's inheritance, that the wife had filed for a divorce almost immediately after the estate of the husband's father had been settled, and that the wife had unilaterally decided to divorce the husband, and the fact that the wife was awarded $5,000 in periodic alimony per month, we cannot conclude that the trial court exceeded its discretion in dividing the parties' property.
Conclusion
Based on the foregoing, we reverse the trial court's judgment to the extent that it awarded the husband a portion of the wife's $100,000 inheritance from her father. We affirm the judgment in all other respects. We remand this cause for the trial court to enter a judgment in accordance with this opinion.
The husband's motion to strike "Appendix A" to the wife's appellate brief is granted. See, e.g., Chamberlin v. Chamberlin, 184 So.3d 1016, 1023 n.1 (Ala. Civ. App. 2014). The husband's motion for an award of attorney's fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Pittman, Thomas, and Donaldson, JJ., concur.
Thompson, P.J., concurs in part and dissents in part, with writing.

The wife argues in her brief that the total amount in those accounts is $1,478,800, whereas the husband's exhibit indicates the total amount to be $1,186,197.